# STATE, BY WALTER F. MONDALE, ATTORNEY GENERAL, v. THE HANNA MINING COMPANY.

121 N. W. (2d) 356.

March 1, 1963—No. 38,660.

*Montague, Applequist, Lyons, Nolan, Donovan & Knetsch,* for appellant.

*Walter F. Mondale,* Attorney General, *Frank J. Murray,* Depu-

ty Attorney General, and *Gordon C. Moosbrugger,* Special Assistant Attorney General, for respondent.

MURPHY, JUSTICE.

This is an appeal from a summary judgment entered in favor of the State of Minnesota and against the defendant, The Hanna Mining Company, for rentals accrued on a certain mining lease.

From the record it appears that on March 10, 1952, the state leased to Zontelli Brothers Inc. "that part of the lakebed of Jeune Lake, a navigable body of water both in fact and in law" located in Crow Wing County, described by lot and section numbers according to government survey. The purpose of the lease was to permit the "exploring for, mining, taking out and removing the iron ore found on or in said premises," and it gave to the lessee the right to construct buildings, excavations, drains, roads, and other improvments "as may be necessary or suitable for such purposes." The lease provided for the method of computing royalty rates to be paid by the lessee and included numerous other provisions required by statute governing the leasing of state-owned mineral properties. It further appears that on February 11, 1953, Zontelli Brothers assigned the lease to the defendant, The Hanna Mining Company, the latter assuming all of the covenants contained in that instrument. The complaint alleges that on May 16, 1955, when the lease was canceled by the state, the amount of $3,131.86 had accrued as rental under the terms thereof.

By its answer the defendant alleges, contrary to the recitals in the lease, that the bed of Jeune Lake never belonged to the State of Minnesota and that consequently the state is not entitled to rentals claimed. The answer suggests that Jeune Lake is one of a chain of nonnavigable lakes in Crow Wing County, the beds of which are not owned by the State of Minnesota.[1] By an amendment to its

---

[1]It was held in State v. Adams, 251 Minn. 521, 89 N. W. (2d) 661, certiorari denied, 358 U. S. 826, 79 S. Ct. 45, 3 L. ed. (2d) 67, that the evidence established, in six actions brought by the state to determine adverse claims to beds of certain lakes and connecting streams, that neither Rab-

answer the defendant further alleges that "approximately 12 years ago" an action was started by the State of Minnesota to determine title to the bed of Jeune Lake, that said action is still pending, and that "there is serious doubt of the State's ownership of the bed of said lake and * * * the matters relevant in this action can be best determined and tried" in that case. By a further amendment to the answer the defendant asserted a counterclaim in which it alleged that the state, not being the owner of the property covered by the lease, has illegally collected from the lessee rents in the sum of $8,000 and demanded recovery in that amount.

The motion for summary judgment was submitted on the pleadings, which included the lease in question. No affidavits, depositions, or other material was submitted. Without a memorandum, the trial court entered an order granting summary judgment pursuant to Rule 56, Rules of Civil Procedure. We gather that the trial court's order was based upon the theory that the defendant was estopped from denying the title of the State of Minnesota and that there was no genuine issue as to any material fact presented by the pleadings.

The defendant does not suggest either by its pleadings, brief, or argument that there has been fraud or misrepresentation on the part of the state or that it has been denied the benefits of its bargain; nor does it assert that third parties seek to recover on the same claim or that the state has been unjustly enriched. Its position is that it should not be required to pay until the state's title is judicially determined. In essence the theory of defense is that the state's title is doubtful and that if the defendant is permitted to litigate that issue, or if these proceedings are stayed pending the outcome of the longstanding suit referred to in its amended answer, it might be determined that third parties and not the state are the owners of the lakebed. For reasons hereinafter stated, we conclude on the record before us that the issue

bit River nor Rabbit Lake was navigable at the time Minnesota was admitted to the Union and that consequently title to the lakebed was in the riparian owners. The riparian owners were parties to that litigation. From an examination of the decision, it does not appear that the title to the bed of Jeune Lake was in issue.

of title may not be asserted by the defendant and that the rights of third parties, whose interest in the property may be adverse to the state, are irrelevant to this suit.

■ The parties devoted much of their briefs to a discussion of the subject of estoppel by a tenant to deny the landlord's title. It appears that in a possessory action or one against a tenant in possession for rent the general rule is that so long as a tenant remains in possession of the demised premises he is precluded from denying the validity of the title under which he entered and agreed to hold.[2] But we are not concerned here with those authorities which bear upon the principles of estoppel as they apply to a tenant who asserts that another has title paramount to that of his landlord. We are concerned with the narrow issue of whether a tenant who is no longer in the possession of leased premises may assert his landlord's want of title as a defense in an action for rent accrued to the time the lease is canceled. We think the correct rule to be applied to the facts presented on the record before us is that where a tenant goes into possession under the provisions of a leasing agreement, is not disturbed in his use or occupancy of the premises, and receives the benefits he bargained for, he is bound by his contract to pay the rent whether the landlord's title is defective or not.[3] This holding is not only consonant with the equitable principle that one who receives the benefits of occupancy of the property should be estopped from questioning the landlord's title, but is required for the further reason that the tenant by its contract here has agreed that the state is in fact the owner of the property and that it would pay the stipulated rentals for the benefits received.[4] We must also hold

---

[2] Allen v. Chatfield, 8 Minn. 386 (435); Davidson v. Minnesota Loan & Trust Co. 158 Minn. 411, 197 N. W. 833, 32 A. L. R. 1418; Merchants & Farmers State Bank v. Olson, 189 Minn. 528, 250 N. W. 366, 89 A. L. R. 1289.

[3] Metropolitan Fuel Distributors, Inc. v. Coogan, 277 App. Div. 138, 97 N. Y. S. (2d) 851; Dwinell v. Brown, 65 Ga. 438, 38 Am. R. 792; McRoberts v. Stadelman, 168 Pa. Super. 489, 79 A. (2d) 119; Morrison v. Bassett, 26 Minn. 235, 2 N. W. 851; 32 Am. Jur., Landlord and Tenant, § 123; 51 C. J. S., Landlord and Tenant, § 271.

[4] See, Morrison v. Bassett, *supra;* Smith v. Harvanko, 160 Minn. 532, 200

that the claim asserted by the defendant's counterclaim must be denied for the same reasons that the claim for delinquent rentals is allowed.

■ Since the defendant is estopped from asserting the only defense raised by its answer and supplementary pleadings, no genuine issue as to any material fact remains. We are, accordingly, of the view that the trial court was correct as a matter of law in granting summary judgment under Rule 56.03, Rules of Civil Procedure.[5]

■ It is next asserted by the defendant that "even if the State's allegations with regard to appellant being estopped to question the validity of the title of the State were held to be correct, still summary judgment would be an improper remedy" because by canceling the lease the state absolved the tenant "from liability under such lease even if the State had title to the leased premises." This argument is based on Minn. St. 93.29, originally L. 1919, c. 501, § 1, which provides:

"In all cases where mineral leases have been issued under the provisions of section 93.20 and have been canceled by the commissioner for non-payment of any annual or quarterly payment provided for in the lease, this cancelation shall terminate all liability thereunder if no damage has been sustained to the land covered by the lease or development work performed thereunder."[6]

---

N. W. 90; Sage v. Halverson, 72 Minn. 294, 75 N. W. 229; Johnson v. Sackrison, 78 Minn. 107, 80 N. W. 858; St. Anthony Falls Water-Power Co. v. Morrison, 12 Minn. 162 (249); Exsted v. Exsted, 202 Minn. 521, 279 N. W. 554, 117 A. L. R. 599.

[5] Rule 56.03 provides: "* * * Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine issue as to any material fact* and that either party is entitled to a judgment as a matter of law." (Italics supplied.)

[6] In support of its argument that § 93.29 has been repealed, the attorney general's brief points out:

"To point out clearly the non-applicability of sec. 93.29 to this lease, it is necessary to refer to the history of the various laws mentioned. Sec. 93.29 was originally enacted as L. 1919, c. 501 and applied only to leases

It seems to us that the defendant overlooks the heading of the lease, which indicates clearly that it is made pursuant to "Minnesota Statutes 1949, Section 93.20 as amended by Laws 1951, Chapter 616." The latter act, which relates to "state lands and minerals" and prescribes "the form and provisions of iron ore mining leases," specifically provides that in case of cancellation, "all arrearages and sums which shall be due under this lease up to the time of such termination shall be paid upon settlement and adjustment thereof by the [party] of the second part."

The lease form used by the state prior to 1951 was originally provided for by L. 1921, c. 412, § 7. The wording of the covenants and conditions required by this statute was not substantially changed by subsequent modifications and additions. L. 1921, c. 412, § 7, pro-

---

issued under the provisions of sec. 5315 of the General Statutes of 1913; sec. 5315 related only to leases of surface lands and not to lake beds. There was no lake bed lease law until L. 1917, c. 110, which was coded as Masons secs. 6428, 6429 and 6430. Therefore it clearly appears that L. 1919, c. 501 never applied to leases of lake beds.

"The instant lease was issued, as stated above, pursuant to sec. 93.354, which was enacted as L. 1943, c. 208 and is the current lake bed lease law and takes the place of L. 1917, c. 110, which is repealed. As a matter of fact, in the year 1919 when c. 501 was passed (now sec. 93.29) there was no law under which new sales of mineral *lands* could be held, because there was some turmoil over iron mine leasing policy, and c. 501 was intended merely to apply to leases issued theretofore. It was not until L. 1921, c. 412, that new sales of mineral *lands* could be held. This is the law which, as amended, presently governs the leasing of state mineral lands.

"G. S. 1913, sec. 5315 prescribed the form for state mineral leases, and did not contain any language which was inconsistent with L. 1919, c. 501. Therefore, at the time of its passage, c. 501 undoubtedly was substantive legislation, creating substantive rights. However, L. 1921, c. 412, sec. 7 contained an express provision that in the event of cancellation for nonpayment of rent such cancellation and reentry shall not work a forfeiture of the rents, royalties or taxes or other sums due at the time of such reentry. This language is diametrically contrary to the provisions of L. 1919, c. 501, and sec. 16 of L. 1921, c. 412 is a repealer of all inconsistent acts. Thus c. 501 is repealed by implication. (Subd. 7 of c. 412 has now become sec. 93.20, subd. 34 and its sense is the same.)"

vided in part that upon failure of the tenant to perform the covenants and conditions of the lease and upon subsequent cancellation, the state could reenter and again possess the premises, "but such re-entry shall not work a forfeiture of the rents, royalties or taxes or other sums to be paid at the time of such re-entry." Section 16 of the same act provided: "All acts and parts of acts inconsistent herewith are hereby repealed." Section 25 of the lease here provides that in the case of cancellation, "such termination and re-entry shall not relieve the party of the second part from any payment or other liability thereupon or theretofore incurred hereunder," which is the language prescribed by Minn. St. 93.20, subd. 34 (L. 1951, c. 616, § 1).

Obviously, there is an inconsistency between § 93.29 and § 93.20. The point raised by the defendant may be disposed of by authority of State ex rel. Mergens v. Babcock, 175 Minn. 583, 222 N. W. 285, which holds that where statutes are inconsistent, the latest expression of the legislature will control. Minn. St. 645.26, subd. 4, provides:

"When the provisions of two or more laws passed at different sessions of the legislature are irreconcilable, the law latest in date of final enactment shall prevail."

The state's complaint asks judgment for $3,131.86 as accrued rental. The complaint and record failed to establish the period for which the rental is claimed or the basis upon which it is computed. While we decide that it was proper for the trial court to grant summary judgment on the issue of liability, it appears to us that the amount which the state is entitled to recover under the terms of the lease still remains an issue to be determined by the trial court. The case is accordingly remanded for further proceedings on that one issue.

Affirmed with directions.

MR. JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.