## B. W. & LEO HARRIS COMPANY v. DAKOTA COUNTY.[1]

December 16, 1955.

No. 36,596.

*Benedict Deinard* and *Leonard, Street & Deinard,* for appellant.
*Roy C. Nelsen,* County Attorney, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court on January 14, 1955, against the appellant petitioner, B. W. & Leo Harris Company, in

---

[1]Reported in 74 N. W. (2d) 111.

favor of respondent, Dakota County, Minnesota. The action came on for hearing before the trial court on a petition by the Harris Company under M. S. A. c. 278 for judgment that an attempted back assessment of petitioner's property and the taxes sought to be levied and collected against it be declared void. The case was tried on a stipulation of facts between the petitioner and respondents. The trial court after considering the evidence, the files and records, and arguments of counsel and pursuant to the stipulation found:

That the petitioner is a duly organized Minnesota corporation and has, since before 1948, been the owner of the west one-third of block 16 of the town (now city) of Hastings, Minnesota;

That in the real estate assessment books for Dakota County showing assessment of taxable real property in the city of Hastings for every even-numbered year said property is carried in the name of the city of Hastings and was designated as tax exempt for the years 1948, 1950, and 1952; that the said exemption was in recognition of a claim by the city of Hastings that it owned the property; and that at the time of the making and filing of the above referred to stipulation, the 1954 assessment book had not yet been made up.

That for many years prior to and until February 8, 1954, and also including the years 1948 through 1953, the property in question was carried in the tax list of real estate in the assessment books for the city of Hastings, prepared annually by the county auditor for Dakota County, as being assessed in the name of the city of Hastings and as being tax exempt; that prior to February 8, 1954, no taxes or assessments were extended against the property on the tax list for the years 1948 through 1953, inclusive, with the exception of a special assessment for street lighting in 1952 in the amount of $79.78.

That as a result of an action to quiet title to the property in question brought by the petitioner in the trial court and pursuant to a decision and mandate of the Minnesota supreme court a decree was entered August 7, 1953, establishing the petitioner's title to and ownership of the property.

That on December 9, 1953, the deputy county assessor of Dakota County submitted to the Dakota county auditor a memorandum

notifying the auditor that this property was not assessed in the years 1947 through 1953, inclusive, and that it should be added as omitted property and that in accordance with M. S. A. 273.02 it was the duty of the county auditor to extend against the property on the tax list for the current year all arrearage of taxes properly accruing against it; that the memorandum further purported to classify the property as urban and nonhomestead and to place upon it a full and true valuation of $3,000 and an assessed valuation of $1,200.

That on or about February 8, 1954, the Dakota county auditor acting in response to the memorandum from the assessor modified the tax list which he had already prepared for the year 1953 with respect to this property by inserting petitioner's name in the column of the tax list showing in whose name the property is assessed, and by inserting in the column for assessed valuation the figure $1,200, and by inserting the following entries in the columns for street lighting assessments and total taxes:

|      | Assessment | Total    |
|------|-----------|----------|
| 1948 |           | $225.58  |
| 1949 |           | $224.28  |
| 1950 |           | $221.26  |
| 1951 |           | $227.65  |
| 1952 | $79.78    | $309.66  |
| 1953 | $76.10    | $303.49  |

That on or about May 14, 1954, the Dakota county treasurer issued to the petitioner a statement of real estate taxes on said property for the year 1953 showing a total of taxes due, for the year 1953 and payable in 1954, of $1,511.92.

That on May 28, 1954, W. A. Schultz, one of the judges of the district court in which the trial was held, made an order permitting petitioner to file its petition for a determination of the legality of taxes levied against its real estate without, as a condition precedent thereto, paying to the county treasurer any part of the taxes.

The trial court then concluded that the petitioner was not entitled to the relief prayed for in its petition; that the Dakota county auditor's assessment of petitioner's property showing a total of

taxes for the year 1953, payable in 1954, of $1,511.92, was in all respects valid and legal; and that the real property in question was liable for taxes in the sum of $1,511.92, and ordered judgment accordingly. In its memorandum attached to its order the court stated in part:

"* * * In the instant case the property was carried on the assessment books but was, it appears, erroneously treated as being exempt. Clearly it was thus 'omitted in the assessment' for the years in question, within the meaning of the statute under which we are here proceeding."

It is the position of the petitioner:

(a) That § 273.02 did not authorize the back assessments and taxation in that the property was not omitted in the assessment of any of the years 1948 through 1953.

(b) That even if the property was omitted the back assessments are void because not entered and extended within the time permitted by the statute.

Petitioner further contends that in any event the street lighting assessments for the years 1952 and 1953 are void.

■ Section 273.02, subd. 1, so far as is pertinent, reads as follows:

"If any real or personal property be omitted in the assessment of any year or years, and the property thereby escape taxation, * * * when such omission * * * is discovered the county auditor shall in the case of omitted property enter such property on the assessment and tax books for the year or years omitted, * * *; and he shall assess the property, and extend against the same on the tax list for the current year all arrearage of taxes properly accruing against it, * * * . If any tax on any property liable to taxation is prevented from being collected for any year or years by reason of any erroneous proceedings, * * * or other cause, the amount of such tax which such property should have paid shall be added to the tax on such property for the current year."

Petitioner argues that the land was not omitted in the assessment because it was carried on the tax list in the city's name and as being,

therefore, exempt instead of being carried in the petitioner's name and at a valuation.

An examination of c. 273, under the caption "Taxes; Listing, Assessment," indicates that listing and assessment are two separate and distinct acts. The following excerpts from this chapter are pertinent:

§ 273.01. "All real property subject to taxation shall be *listed* and *assessed* every even-numbered year with reference to its value * * *, and all real property becoming taxable any intervening year shall be *listed* and *assessed* with reference to its value * * *. Personal property shall be *listed* and *assessed* * * *." (Italics supplied.)

§ 273.03. "* * * *The list* of real property *becoming subject to assessment* and taxation every odd-numbered year may be appended to the personal property assessment book." (Italics supplied.)

§ 273.08. "* * * If any property is *listed* or *assessed* on or after the fourth Monday of June, and before the return of the assessor's books, the same shall be as legal and binding as if *listed* and *assessed* before that time." (Italics supplied.)

It is clear that the legislature contemplated that the acts following the listing of the property constitute an assessment. These acts which constitute the assessment are to be found in § 273.071, subd. 14, dealing with duties of the county supervisors of assessments, and § 273.08, dealing with assessor's duties, which read as follows:

§ 273.071, subd. 14. "The duties of the county assessor shall be as follows: (a) To make all assessments, based upon the appraised values reported to him by the local assessors or his assistants and his own knowledge of the value of the property assessed; (b) To personally view and determine the value of any property which because of its type or character may be difficult for the local assessor to appraise; * * * (d)[2] To enter all assessments in the assessment

[2]Due to a misprint Minnesota Statutes 1953, § 273.071, subd. 14(d), erroneously states: "To enter all assessments in the tabular statements for each book in correct balance." For correct statement, see L. 1947, c. 531, § 14(d), quoted as (d) above.

books, furnished him by the county auditor, with each book and the tabular statements for each book in correct balance; * * *."

§ 273.08. "* * * He [assessor] shall actually view, when prac: ticable, and determine the true and full value of each tract or lot of real property listed for taxation, and shall enter the value thereof, including the value of all improvements and structures thereon, opposite each description. * * *"

In our opinion the legislature clearly intended that "assessment" mean the act of carrying out the duties of the assessor as defined in § 273.071, subd. 14, and § 273.08. In other words, "assessment" is the process of going forward from the time the property is listed; of viewing the property, determining its true and full value, entering that value on the book opposite the description, entering the assessment in the assessment book and on the tabular statements for each book in correct balance. It logically follows that, if those acts have not been done, the property is omitted from the assessment.

While it appears from the court's findings based on the stipulation that for many years prior to and until February 8, 1954, including the years 1948 to 1953, the property in question was carried in the tax *list* of real estate on the assessment books as being in the name of the city, there is nothing on the record to show that anything was done after the listing to complete the assessment as provided by the statutes, such as viewing the property, determining its true and full value, entering that value on the book opposite the description, and entering the assessment in the assessment book and on the tabular statements for each book in correct balance. Rather it appears that all that was done was to list the property as being exempt. It there- fore follows under the facts and circumstances here that property under consideration was omitted in the assessment.

Petitioner has argued numerous other points in substantiation of its position that the property was not omitted in the assessment. We have carefully considered all of the points raised as well as the cases cited but do not consider them decisive of the issue at bar. In view of our interpretation of our statutes that the property was omitted in the assessment it will serve no useful purpose to attempt

to discuss all of the other matters raised with reference to the question of whether the property involved was omitted in the assessment.

■ The second issue to be decided is whether the back assessments are void because not entered and extended within the time permitted by the statute. In respect to this it is the position of the petitioner that the statute does not permit any back assessment unless it is made in the year of discovery or omission. Petitioner contends that there was no stipulation or finding as to when the auditor "discovered" the omission and claims that neither the stipulation or finding cover that point by merely reciting that the deputy assessor notified the auditor in December 1953.

Petitioner further contends that the county auditor knew for some time before he made the back assessment that there had been an omission in the assessment. Respondent argues that there has never been any contention on its part that the county auditor did not know that the property was listed as being tax exempt, but contends that until a decision was made on July 24, 1953, in the case of B. W. & Leo Harris Co. v. City of Hastings, 240 Minn. 44, 59 N. W. (2d) 813, there had been no judicial finding as to who was the owner of the property. Petitioner's answer to this contention is that the city had no semblance of a record title at any time and that the county auditor was the best one in the county to discover who owned the property and further that constructively the county auditor was bound to know the facts upon which the court predicated its decision in the action to quiet title. B. W. & Leo Harris Co. v. City of Hastings, *supra*.[3]

As conceded by the respondent, the county auditor did know that the property was listed in the name of the city of Hastings. However, the findings of fact reveal that the county auditor discovered when our decision was handed down in B. W. & Leo Harris Co. v. City of Hastings, *supra,* that the property was erroneously listed in the name of the city. In answer to petitioner's contention that the

---

[3]In that case involving the same property as the case at bar it was decided that the city of Hastings had not acquired title by adverse possession and that B. W. & Leo Harris Co. had been the record owners of this property since 1930 when it had received a deed to the property.

county auditor was bound to know the facts, we find nothing in the statutes which places a duty on the county auditor to search the records periodically and make a determination as to who actually owns property listed on the tax rolls. Rather it appears from § 273.03 that the county auditor shall make out in the real property assessment book complete lists of all lands or lots subject to taxation and he shall show the names of the owners if known to him and if unknown he shall so state opposite each tract or lot.[4] Therefore it is our opinion that although the auditor did know that the property had been omitted in the assessment he would not have known until our decision in B. W. & Leo Harris Co. v. City of Hastings, *supra*, that there was such an omission that the property was thereby escaping taxation within the purview of § 273.02, subd. 1. Thus it appears to us under the circumstances here that the county auditor did discover what was contemplated to be discovered by § 273.02, subd. 1, and the back assessment was made within the time allowed by the statute.

■ The third issue raised by the petitioner is whether or not the back assessment for street lighting for the years 1952-1953 was void. Petitioner argues on appeal that § 273.02 does not apply to special assessments but that reassessment of property for street lighting is covered by c. 429. It will be recalled that the sum of $79.78 and $76.10 were included for street lighting assessments in the total amount of $1,511.92 which the trial court concluded was a valid and legal total back assessment.

Chapter 429 deals with local improvements and special assessments. Section 429.071, subd. 1, reads as follows:

"SUPPLEMENTAL ASSESSMENTS; RE-ASSESSMENT. Subdivision 1. **Supplemental assessments.** *Upon notice and hearing as provided for the original assessment,* the council may make supplemental assessments to correct omissions, errors, or mistakes in the assessment

---

[4]See, also, Opinion Attorney General, No. 21-F, August 6, 1943, to the effect that, when listing real property for purposes of taxation, the county auditor shows names of owners of land if known to him. If not known to him he so states, and he is not concerned in controversy between private claimants to title of land.

relating to the total cost of the improvement or any other particular." (Italics supplied.)

It is clear therefore that, in order to back assess property for special assessments, notice and hearing must be given as provided in the original proceedings. See, Opinion Attorney General, No. 408-B, December 8, 1952. It is undisputed from the record that this procedure was not followed in the instant case. It is therefore our opinion that the judgment of the trial court is in part erroneous in that it should not have included in the $1,511.92 the amounts of $79.78 and $76.10 for the street lighting assessments.

Affirmed in part and reversed in part in accordance with this opinion.