IN RE PETITION OF SUMMIT HOUSE APARTMENT COMPANY v. COUNTY OF HENNEPIN AND ANOTHER.

253 N. W. 2d 127.

March 18, 1977—No. 46796.

*Leonard, Street & Deinard, Harold D. Field, Jr.,* and *Edward M. Moersfelder,* for appellant.

*Gary W. Flakne,* County Attorney, and *David E. Culbert,* Assistant County Attorney, for respondent county.

*Warren Spannaus,* Attorney General, and *Thomas K. Overton,* Special Assistant Attorney General, for respondent state.

Heard before Rogosheske, Kelly, and Todd, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Summit House Apartment Company, the owner-taxpayer of certain apartment buildings, seeks a judicial determination of its claim of illegal assessment of the property for taxes payable in 1975.[1] The sole issue raised on appeal is whether L. 1973, c. 590, enacted in May 1973 and now encoded as Minn. St. 273.13, subd. 20, which created a new classification for certain apartment buildings by reducing their assessed value from 40 percent to 25 percent of market value, was intended to be effective for taxes payable in 1975 or 1976. The trial court in denying the taxpayer's motion for partial summary judgment ruled that the reduction was intended to be effective as to assessments made in

---

[1] This special proceeding is authorized by Minn. St. 278.01.

1975 for taxes payable in 1976. Upon application of the taxpayer, the trial court certified the issue as important and doubtful. Rule 103.03(i), Rules of Civil Appellate Procedure. We affirm the decision of the trial court.

The taxpayer owns two high-rise apartment buildings with surrounding areas and grounds. These building were constructed and put to use some years prior to 1973 and were assessed as of January 2, 1973, at a market value of $5,593,500. Pursuant to Minn. St. 273.13, subd. 19, the city assessor reduced that value by a 40-percent classification percentage to determine its assessed value for the purpose of levying and collecting the real estate taxes payable in 1975. The taxpayer, relying on the statute's effective-date provision of January 1, 1975, (L. 1973, c. 590, § 2) argues that the reduced classification percentage of 25 percent should be applied for determining the assessed value for taxes payable in 1975. L. 1973, c. 590, provides in relevant part:

"That portion of real property subject to a general property tax and assessed as a structure upon the land shall, when such structure is constructed with materials meeting the requirements for type I or II construction as defined in the state building code, 90 percent or more is used or is to be used as apartment housing, and no part of which is subject to the provisions of subdivisions 7 and 17, of this section, be classified for the purposes of taxation for a period of 40 years from the date of completion of original construction, or the date of initial though partial use, whichever is the earlier date, as follows: (a) When such structure is of a height of five or more stories that part, section, floor or area used or to be used for apartment housing shall be valued and assessed at 25 percent of the market value thereof * * *.

"Sec. 2.    This act is effective January 1, 1975."

It is undisputed that the taxpayer's apartment buildings meet the construction and use criteria of '§ 273.13, subd. 20. On this appeal, the issue is simply whether the reduced classification percentage of 25 percent is intended to apply initially to qualifying

structures "valued and assessed" in 1974 for taxes payable in 1975 or to those "valued and assessed" in 1975 for taxes payable in 1976.

We first observe that § 273.13, to which subd. 20 was added in 1973, deals exclusively with the subject of classifying property for the purposes of assessing and valuing property subject to taxation. It contains no provision with respect to the levying or collection of taxes. The obvious legislative purpose of § 273.13, subd. 20, was to add a new classification and to provide a tax incentive to stimulate the quality construction of high-rise apartment buildings. Under our statutory scheme, classification is a part of the process of assessing the value of property, which is primarily the assessor's responsibility subject to sequential review by local, county, and state boards of review or equalization, and by the commissioner of revenue. § 273.11. It is only after completion of the assessment process that the auditor calculates the tax and compiles tax lists. By October 16, these lists are deemed complete and all taxes extended, subject to the auditor's limited authority to make changes in the tax lists. § 275.28, subd. 1. The auditor is then required to deliver the tax lists to the treasurer for collection on or before the first Monday in January of the taxable year. § 276.01. Under this statutory procedure there is, therefore, a one-year lag between the assessment and the collection of real estate taxes.

The taxpayer contends, however, that even though the January 1, 1975, effective date for § 273.13, subd. 20, may have prevented the assessor from reclassifying the apartment buildings by October 16, 1974, the function of the county auditor was not complete until the first Monday in 1975, which was January 6. Because § 275.28, subd. 1, and § 276.01 vest the auditor with limited authority to make necessary changes in the tax lists after they are completed but before they are delivered to the county treasurer, petitioner argues that the auditor had the power and duty to apply the 25-percent classification to the property prior to the delivery of the tax list to the treasurer for collection of 1975

taxes. Additionally, the taxpayer contends that the effective date provision of § 273.13, subd. 20, is ambiguous and that any ambiguity, according to our well-settled principles of tax-law construction, should be resolved in favor of the taxpayer.

The weakness of the taxpayer's primary argument is that it rests on the erroneous assumption that the auditor has the statutory authority to classify property. This court has historically drawn a sharp distinction between the function of the assessor and that of the auditor. The assessor is entrusted with the responsibility of assessing property for the purpose of determining its value for taxation. In re Calhoun Beach Holding Co. 205 Minn. 582, 287 N. W. 317 (1939). In contrast, the auditor has the duty of calculating and assessing the taxes once the taxable value has been determined by the assessor. Trask v. Skoog, 138 Minn. 229, 164 N. W. 914 (1917).[2]

For several reasons the task of classification, as a part of the assessment process, is designed to rest with the assessor as opposed to the auditor. First, since 1913 the taxable value of real estate has not been its market value; rather, property has been classified in various categories and taxed at a percentage of its market value. L. 1913, c. 483. Since the assessor has primary responsibility for ascertaining taxable value, it logically follows that the task of classifying property is an integral part of this function. Further, the trial court correctly observed that Minn. St. c. 273, taken as a whole, is essentially an assessment chapter relating to the assessor's duties. The task of classification also involves a factfinding responsibility and is not, as the taxpayer seems to argue, simply an administrative calculation of the appropriate tax that may be performed by the auditor. Whether a particular apartment building qualifies for the 25-percent classification under § 273.13, subd. 20, clearly depends on a wide

---

[2] See, also, Red Owl Stores, Inc. v. Commissioner of Taxation, 264 Minn. 1, 117 N. W. 2d 401 (1962); 18 Dunnell, Dig. (3 ed.) § 9188.

range of factual judgments concerning compliance with specified statutory criteria.

Finally, and most significantly, the legislative history concerning the creation of the 25-percent classification unmistakably supports the conclusion that it was intended to affect taxes payable in 1976. As originally proposed, the effective date provision was January 1, 1974. The amendment advancing it to January 1, 1975, occurred in committee. Since its purpose was to encourage the construction of a specified type of apartment buildings by a reduction in assessed valuation, the legislature could reasonably have surmised that any such construction stimulated by the act would probably not be completed prior to January 1, 1975. A 1974 effective date would undoubtedly have given the benefit of the reduction to existing structures with a resultant loss of tax revenues.

Thus, we hold that the reclassification of qualifying apartment structures at 25 percent of their market value under § 273.13, subd. 20, was explicitly intended to be effective as to the assessment process in 1975 for taxes payable in 1976. Since we find no ambiguity in the language employed to express this intent by the legislature, the taxpayer's arguments directed to that aspect of the case need not be discussed.

Affirmed.