**PROGRAMMED LAND, INC., et al., Respondents,**

v.

**Patrick O'CONNOR, in his capacity as Treasurer and Auditor for Hennepin County, et al., Appellants;**

and

**Harold Christian, individually, and on behalf of all others similarly situated, Respondent,**

v.

**Thomas Novak, in his capacity as Treasurer and Auditor for Dakota County, et al, Appellants.**

Nos. CX–99–777, C7–99–1210.

Court of Appeals of Minnesota.

Dec. 7, 1999.

898

Alan L. Kildow, John J. Steffenhagen, Sonya R. Braunschweig, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, MN; and Robert A. Hill, Robert Hill & Associates, Ltd., Minneapolis, MN; and Keith E. Simons, Keith E. Simons, P.A., Hopkins, MN (for respondents).

Amy Klobuchar, Hennepin County Attorney, Robert T. Rudy, Senior Assistant County Attorney, Mark K. Maher, Assistant County Attorney, Minneapolis, MN (for appellants Hennepin County, et al.).

James C. Backstrom, Dakota County Attorney, Jay R. Stassen, Assistant County Attorney, Hastings, MN (for appellants Dakota County, et al.).

Considered and decided by
SCHUMACHER, Presiding Judge,
RANDALL, Judge, and FOLEY*, Judge.

## OPINION

RANDALL, Judge.

These consolidated cases are based on the miscalculation of property taxes by both Hennepin and Dakota Counties and the subsequent overpayment of taxes by owners of commercial and industrial properties. Hennepin County was denied summary judgment by the district court. In Dakota County, the case went to trial on stipulated facts, and the property owner was awarded judgment. Both counties appeal and argue that: (1) Minnesota Statutes chapter 278 provides the exclusive remedy by which property owners can recover overpayments; and (2) the statute of limitations for this remedy has passed. The counties argue the claims of constitutional violations and equitable relief are invalid. We affirm the decisions made by

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

both the Dakota and Hennepin County district courts.

## FACTS

### I. Hennepin County

Each of the Hennepin County respondents is an owner of commercial or industrial property. Appellants are Hennepin County governmental officials and entities. Appellant Patrick O'Connor is the treasurer and auditor for Hennepin County. Appellant Hennepin County Board of Commissioners is the county's legislative and executive body that levies taxes on commercial, industrial, and utility property in Hennepin County.

Hennepin County respondents' tax payments are based on Hennepin County's yearly assessments of property classified as 3a under Minn.Stat. § 273.13, subd. 24 (1998). Respondents allege the inaccurate calculation of their yearly tax from 1987 to 1998, when respondents filed their complaint, resulted in the overpayment of property taxes of approximately $2,300 per respondent each year. Respondents, who relied on the accuracy of their property tax bills and paid the full amounts within the time prescribed by law, were not informed of the errors in the application of the tax rate.

Upon learning of the mistake in their tax bills, respondents informed appellants about the overpayment and requested reimbursement. Appellants refused to repay respondents. In July 1998, respondents filed an amended complaint charging: (1) overpayment pursuant to Minn.Stat. § 276.19 (1998); (2) recovery of money paid by mistake; (3) recovery of money had and received; (4) breach of contract; (5) unjust enrichment; (6) recovery of excess taxes collected pursuant to Minn.Stat. § 275.26 (1998); (7) abatement of property tax pursuant to Minn.Stat. § 375.192 (1998); (8) violation of the Equal Protection Clause; (9) violation of the Due Process Clause of both the state and federal constitutions; and (10) violation of the Minnesota Constitution's Uniformity Clause.

In December 1998, the Hennepin County district court denied a motion to transfer this case to the Minnesota Tax Court. The supreme court also denied this request. Hennepin County moved for summary judgment, which was denied by the Hennepin County district court on April 19, 1999. At the same time, the Hennepin County district court granted respondents' motion to certify this case as a class action.

### II. Dakota County

Respondent Harold Christian is an owner of commercial vacant land located in Dakota County. Originally, the suit included four individual owners, but the parties stipulated they would proceed to trial only on Christian's claim. The appellants are Thomas Novak, Dakota County Treasurer/Auditor, and Dakota County Board of Commissioners, the legislative body that levies that portion of the annual property taxes required for county expenditures on all non-exempt real property in Dakota County. The parties stipulated to findings of fact and proceeded with a bench trial.

In Dakota County, the assessor annually: (1) assigns a classification to each parcel of taxable real property; (2) calculates the market value of each parcel; (3) calculates the net tax capacity of each parcel by multiplying the market value by the class rate or rates set by the legislature; and (4) provides the Dakota County Treasurer/Auditor with the total net tax capacity for each statutory classification of property. However, the assessor does not provide the treasurer/auditor with information on the class rates applied to each parcel to calculate the net tax capacity. This information is public, and anyone can receive this information by contacting the Dakota County Assessor's Office.

Beginning in 1993, Christian's property was classified as class 3a commercial property pursuant to Minn.Stat. § 273.13, subd. 24 (Supp.1993). In 1994, the Dakota

County Assessor's Office sought clarification from the Minnesota Department of Revenue on how to apply the tax rates for class 3a property to vacant land. The revenue department issued a letter stating that vacant land is classified as commercial and should receive a 3% class rate on the first $100,000 of market value for one commercial class parcel, per county, per taxpayer. The commercial or industrial properties that received the 3% class rate were identified in 1993 property tax statements as "commercial preferred" or "industrial preferred."

To provide the information needed by the treasurer/auditor to prepare property tax statements, the assessor calculates the net tax capacity of each parcel by multiplying the market value by the applicable class rate or rates, and then adds together the net taxable values for all parcels to obtain the total net taxable capacity in Dakota County for that year. Christian paid the full amount applied to his property in 1993. However, in calculating the net tax capacity for the property to prepare the 1993 statement, the assessor applied a rate greater than 5.06% of the market value of the property. This amount was incorrect and overstated. Christian was not provided the 3% tax rate for the first $100,000 of market value for any parcel of commercial property, and overpaid his 1993 taxes by $1,988.04.

Christian advised Dakota County of the 1993 error by filing a complaint in September 1997. The complaint contained substantially the same charges as the complaint later filed by other landowners in Hennepin County. Christian requested a refund, which Dakota County denied. Dakota County never notified Christian that any overpayment had occurred, nor did it provide Christian with any instructions on how to make a claim for the overpayment.

However, in 1993, Christian received all notices and tax statements that Dakota County was required by statute to provide. Christian never filed a tax petition under Minnesota Statutes Chapter 278 for repayment of the 1993 taxes. However, he did file a petition under this chapter for the overpayment of 1994 taxes, which were refunded. After 1995, the Dakota County assessor correctly applied the 3% class rate.

The county filed a motion for summary judgment in district court, seeking dismissal of Christian's action and arguing that his failure to file a petition under chapter 278 for taxes payable in 1993 was a fatal flaw, depriving the district court of subject matter jurisdiction. In April 1998, the Dakota County district court denied this motion. After a trial on stipulated facts, the Dakota County district court ordered judgment for Christian in the amount of $1,988.04, plus prejudgment interest of $516.11 from October 15, 1993 through April 12, 1999. Judgment was entered on May 18, 1999.

■■■ Both Dakota and Hennepin Counties appealed from their respective district court decisions and the appeals were consolidated for argument and decision in this court.[1]

## ISSUES

1. Did both the Hennepin and Dakota County district courts err by concluding that Minn.Stat. § 278.01 (1998) was not the exclusive remedy for contesting errors made when calculating respondents' property taxes?

2. Did the Hennepin County district court err by concluding that Minn.Stat. § 276.19 (1998) provides a remedy to recover overpayments?

1. Although orders denying motions for summary judgment are generally not appealable, we review the order denying Hennepin County summary judgment because Hennepin County based its summary judgment motion, in part, on governmental immunity and sub-ject matter jurisdiction. *See McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 832–33 (Minn.1995) (recognizing denials of summary judgment motion may be reviewed if motion based on governmental immunity or subject matter jurisdiction).

3. Did the Hennepin County district court err by concluding that respondents could recover under their constitutional claims?

4. Did the Dakota County district court err by concluding Christian may recover in equity?

5. Can Hennepin County respondents recover through injunctive relief, declaratory judgment, or abatement?

## ANALYSIS

A reviewing court is not bound by and need not give deference to a district court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). When a case was decided on stipulated facts, as was the claim brought in Dakota County, the only issue on appeal is whether the district court erred in its application of the law. *Fingerhut Corp. v. Suburban Nat'l Bank*, 460 N.W.2d 63, 65 (Minn.App.1990). However, if the appeal is from a denial of summary judgment, as is the appeal by Hennepin County, two questions are considered: (1) whether there are any genuine issues of material fact; and (2) whether the district court erred in its application of the law. *Gleason v. Metropolitan Council Transit Operations*, 582 N.W.2d 216, 218–19 (Minn.1998).

### I. Exclusivity of Minn.Stat. § 278.01

Both Hennepin and Dakota County appellants argue that Minn.Stat. § 278.01 (1998)[2] provides the exclusive remedy for landowners challenging the calculation of property taxes. Section 278.01 states that a taxpayer may bring a claim in district or tax court alleging that

> property has been partially, unfairly, or unequally assessed in comparison with other property in the * * * county * * * or that the parcel has been as-

sessed at a valuation greater than its real or actual value, or that the tax levied against the same is illegal, in whole or in part, or has been paid, or that the property is exempt from the tax so levied.

Minn.Stat. § 278.01, subd. 1. The petitioner must file an objection "on or before March 31 of the year in which the tax becomes payable." *Id.* It is settled that this statute is the exclusive remedy by which to challenge unfairly or unequally assessed realty. *Evanson v. Commissioner of Taxation*, 280 Minn. 559, 561, 159 N.W.2d 259, 261 (1968); *see also Fichtner v. Schiller*, 271 Minn. 263, 267, 135 N.W.2d 877, 880 (1965) (indicating statute exclusive remedy for challenge to lawfulness of tax); *Omdahl v. Hadler*, 459 N.W.2d 355, 360 (Minn.App.1990) (indicating statute applies to special assessments as well as general taxes).

Section 278.01 was originally enacted in 1935, and the Minnesota Supreme Court has explained that the legislative intent was

> to provide an adequate, speedy, and simple remedy for any taxpayer to have the validity of his claim, defense, or objections determined by the district court in matters where the taxpayer claims that his real estate has been partially, unfairly, or unequally assessed, or that it has been assessed at a value greater than its real or actual value, or that the tax levied against the property is illegal in whole or in part, or has been paid, or that the property is exempt from the tax so levied.

*Land O'Lakes Dairy Co. v. Village of Sebeka*, 225 Minn. 540, 548, 31 N.W.2d 660, 665 (1948). The dispositive question is whether the error by each county in overcharging the respondents is an "assessment error," so that relief can be sought only under Minn.Stat. § 278.01, or whether the error was simply a clerical or arith-

**2.** The Dakota County complaint was filed in 1997, and, therefore, the 1996 version of Minn.Stat. § 278.01 applies. But because the statute was not amended in 1997 or 1998, we will refer to the 1998 version.

metical mistake when applying statutory tax rates.

### A. Progression of Minn.Stat. § 273.13

To better understand the parties' arguments, it is helpful to understand a portion of the history of section 273.13, which classifies property for taxation purposes.

The 1982 version of Minn.Stat. § 273.13 stated in pertinent part:

(1) All property not included in the preceding classes shall constitute *class 4a* and shall be valued and assessed at 43 percent of the market value thereof, except as otherwise provided in this subdivision.

\* \* \* \*

(3) Commercial and industrial property, except as provided in this subdivision, shall constitute *class 4c* and shall be valued and assessed at 40 percent of the first $50,000 of market value and 43 percent of the remainder, provided that in the case of state-assessed commercial or industrial property owned by one person or entity, only one parcel shall qualify for the 40 percent assessment, and in the case of other commercial or industrial property owned by one person or entity, only one parcel in each county shall qualify for the 40 percent assessment.

Minn.Stat. § 273.13, subd. 9 (1982) (emphasis added). In 1985, the statute was amended and reorganized to read in relevant part:

Commercial and industrial property is *class 3a*. It is assessed at 28 percent of the first $60,000 of market value and 43 percent for the market value over $60,000. In the case of state-assessed commercial or industrial property owned by one person or entity, only one parcel may qualify for the 28 percent assessment. In the case of other commercial or industrial property owned by one person or entity, only one parcel in each

county may qualify for the 28 percent assessment.

1985 Minn. Laws 1st Spec. Sess. ch. 14, art. 4, § 49 (emphasis added) (codified at Minn.Stat. § 273.13, subd. 24(a) (1986)).[3]

In 1993, the statute was amended to provide that if a taxpayer owned a parcel of non-state-assessed commercial, industrial, or utility property with a market value under $100,000 and owned additional parcels within the same town or city in a county, the reduced class rate would be applied up to a combined total market value of $100,000. 1993 Minn. Laws ch. 375, art. 5, § 24. To receive this reduced class rate on additional parcels, the taxpayer was required to notify the county that the taxpayer owned more than one qualifying parcel. *Id.* In 1997, the legislature deleted the language added in 1993 and amended the statute to provide that, with the exception of contiguous parcels owned by the same taxpayer, *each* parcel of commercial and industrial property would receive the reduced class rate on the first $150,000 of its market value. 1997 Minn. Laws ch. 231, art. 1, § 7.

### B. Classification of Property

■ Appellants argue there are two classes within class 3a, one of which is "preferred." Specifically, Hennepin County argues that the 1982 classes 4a and 4c were combined into class 3a in 1985.

■ The legislature has wide discretion in classifying property for purposes of taxation, but the classification must be based on reasonable differences. *Montgomery Ward & Co. v. Commissioner of Taxation*, 216 Minn. 307, 309–10, 12 N.W.2d 625, 627 (1943). "[A] tax rate must operate without discrimination upon all property within a classification," and the classification shall not be unreasonable, arbitrary, or capricious. *Westling v. County of Mille Lacs*, 581 N.W.2d 815, 820

---

**3.** This amendment became effective for taxes levied in 1986 and payable in 1987. 1985

Minn. Laws 1st Spec. Sess. ch. 14, art. 4, § 99.

(Minn.1998) (citation omitted), *cert. denied*, —— U.S. ——, 119 S.Ct. 872, 142 L.Ed.2d 773 (1999).

The record reflects: (1) both Hennepin and Dakota County differentiated between the general class of 3a commercial and industrial properties and the commercial and industrial properties that received the lower tax rate by designating the properties that received the lower tax rate as "preferred"; (2) the lower tax rate based on ownership existed in 1982 when commercial and industrial properties were classified as 4c; and (3) a 1985 department of revenue publication indicates no substantial changes in this tax law were made when the statute was reorganized in 1985. Minnesota Dep't of Revenue, *Summary of Property Tax Law Changes Made in the 1985 Legislative Session* at 10 (1985). Combining 4a and 4c properties into class 3a did not alter the tax rates applied to commercial and industrial properties.

The only difference between the general pool of commercial and industrial 3a properties and the "preferred" 3a properties is that only one property per owner receives the lower tax rate. There is no reasonable difference between the commercial and industrial properties that do receive the lower tax rate and those that do not, indicating that the legislature did not intend to create two classifications of commercial and industrial property within class 3a. *See In re Cold Spring Granite Co.*, 271 Minn. 460, 466, 136 N.W.2d 782, 787 (1965) (stating propriety of classification for purpose of legislation is primarily for legislature); *Montgomery Ward*, 216 Minn. at 310–11, 12 N.W.2d at 627 (stating classification of subject matter is permissible only if there is reasonable ground for making distinction). What Hennepin County describes as a "classification" is merely the practice of labeling those properties that receive the lower tax rate based on ownership as "preferred." That label makes it easier to identify the property. The Hennepin and Dakota County district courts correctly concluded that the "preferred" classification is artificial.

## C. Duties of County Auditor and Assessor

Both Hennepin County and Dakota County appellants argue the underlying basis for respondents' claims is the duty of the county assessor to classify a parcel of land properly. They point out that the task of assessment includes the classification of ownership, and thus if a classification error occurs, it must be challenged using Minn.Stat. § 278.01. Both Hennepin County respondents and Christian argue the mistake was made by the county auditor in fixing the correct tax rate on each parcel.

> This court has historically drawn a sharp distinction between the function of the assessor and that of the auditor. The assessor is entrusted with the responsibility of assessing property for the purpose of determining its value for taxation. In contrast, the auditor has the duty of calculating and assessing the taxes once the taxable value has been determined by the assessor.

*Summit House Apartment Co. v. County of Hennepin*, 312 Minn. 358, 362, 253 N.W.2d 127, 129 (1977) (citations omitted). All real property subject to taxation is listed by the auditor "to correspond with the assessment books in reference to ownership and description of property." Minn.Stat. § 275.28, subd. 1 (1998);[4] *see also* Minn.Stat. § 273.01 (1998) (setting time for listing and assessment). Generally, the county auditor provides the assessment books annually, but a county may elect to establish an electronic data processing system in place of the assessment books. Minn.Stat. § 273.03, subds. 1, 2 (1998). The county assessor then has the duty to make all assessments and enter

---

**4.** Although the complaints were filed in different years, for the sake of clarity, we will refer to the 1998 version of this statute, because no substantive changes were made to the statute in 1997 or 1998.

them into the assessment books furnished by the county auditor. Minn.Stat. § 273.061, subd. 9(a), (d) (1998). This assessment function has been explained as

the process of going forward from the time the property is listed; of viewing the property, determining its true and full value, entering that value on the book opposite the description, entering the assessment in the assessment book and on the tabular statements for each book in correct balance.

*B.W. & Leo Harris Co. v. Dakota County*, 246 Minn. 20, 25, 74 N.W.2d 111, 114 (1955). Classification involves a factfinding responsibility and is not "simply an administrative calculation of the appropriate tax that may be performed by the auditor." *Summit House*, 312 Minn. at 362, 253 N.W.2d at 129; *see also* Minn. Stat. § 273.061, subds. 8, 8a, 9 (1998) (listing general duties and powers of assessor).

Once the assessor has assessed and classified the property, the assessor returns the assessment books to the county auditor. Minn.Stat. § 274.04, subd. 1 (1998). This is verified by an affidavit that states that the assessor has included a correct list of property and that the market value and net tax capacity are correct to the best of the assessor's knowledge. *Id.*

When the auditor receives the assessment books, the auditor shall examine them and correct any errors. Minn.Stat. §§ 274.08, .09 (1998).

At any time before the final settlement with the county treasurer, the auditor shall charge the owners of the property on the tax lists with the proper amount of taxes.

Minn.Stat. § 274.09. "The rate percent of all taxes * * * shall be calculated and fixed by the county auditor * * * ." Minn. Stat. § 275.08, subd. 1 (1998).

Appellants argue the duties of assessor and auditor have become blurred in actual practice because the assessor calculates net tax capacity in the assessment books before returning them to the auditor. Thus, they argue that section 278.01 should be read broadly to include the calculation of net tax capacity as part of the assessment process, which can only be challenged under section 278.01. The stipulated facts in the Dakota County case establish that the Dakota County assessor calculates net tax capacity before returning the assessment books. Both the statutes and common practice indicate the assessor calculates net tax capacity before returning the assessment books to the auditor, but it is the auditor who has the final responsibility for tax calculation.[5]

It is a question of first impression for this court to determine whether to characterize the application of tax rates based on ownership under Minn.Stat. § 278.01, subd. 1, as an "unfair or unequal assessment." The assessor is charged with determining the correct market value and classification of properties for taxation. Courts have interpreted the assessor's *classification* of properties as falling within the definition of "unfair or unequal assessment" under Minn.Stat. § 278.01, subd. 1. *See, e.g.*, *Summit House*, 312 Minn. at 362, 253 N.W.2d at 129 (including classification as fact-finding task of assessor). *But unlike the determination of market value* and the classification of properties, *the correct application* of statutory tax rates is not discretionary.

The correct application of the statutory tax rates is an administrative function. The ultimate responsibility for this function has been given to the county auditor.[6] There is no evidence that the legislature contemplated that the auditor or assessor

---

5. Because the auditor has the final responsibility for tax calculation, we reject respondents' argument that the system, in practice, produces an illegal delegation of calculation duties from auditor to assessor.

6. When the offices of auditor and treasurer are combined, the statutory functions performed by the auditor will then be performed by the auditor-treasurer. Minn.Stat. § 375A.10, subd. 5 (1998).

would incorrectly apply tax rates based on either a misunderstanding of the statute or a mathematical error. The error made when the counties applied statutory tax rates incorrectly does not constitute an "unfair or unequal assessment" and is not within the purview of section 278.01. Based on these facts, we hold that section 278.01 is not the exclusive remedy for these landowners to challenge a county's error in applying statutory tax rates. The Hennepin County and Dakota County district courts did not err by concluding that section 278.01 is not the exclusive remedy.

## II. Minn.Stat. § 276.19 as Remedy for Overpayments

Appellants argue that Minn.Stat. § 276.19 (1998) does not provide a remedy for the overpayments. Although the Hennepin County district court ruled that this statute provided a remedy, the Dakota County district court did not discuss this issue. Thus, we will discuss this issue only as it relates to Hennepin County. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating appellate court generally may consider only issues presented to and considered by district court).

 Section 276.19 entitled "Unclaimed Overpayments" states:

If an overpayment of property tax arises on a parcel for any reason, the responsible county official shall promptly notify the payer by regular mail that the overpayment has occurred. The notice must state the amount of overpayment and identify the parcel on which the overpayment occurred. The notice must also instruct the payer how to claim the overpayment and advise that the overpayment is subject to forfeiture under this section.

Minn.Stat. § 276.19, subd. 1. The statute also describes the procedure applicable when the person entitled to a refund fails to claim it and controls the distribution of unclaimed refunds. *Id.*, subds. 2, 3. Chapter 278 describes remedies available to taxpayers whose properties have been in-

correctly assessed or illegally taxed. *See* Minn.Stat. § 278.01, subd. 1 (providing remedy for improper assessments and tax levies). This chapter explains the procedure to be followed when a taxpayer has made an overpayment. Minn.Stat. § 278.12 (1998). Section 276.19 merely details the notification process the county must follow after realizing a taxpayer has overpaid. Minn.Stat. § 276.19. On their faces, chapter 278 and section 276.19 do not conflict.

Statutes are said to be in *"pari materia"* when they relate to the same matter or subject even though some are specific and some general and even though they have not been enacted simultaneously and do not refer to each other expressly.

*State ex rel. Carlton v. Weed*, 208 Minn. 342, 344, 294 N.W. 370, 371–72 (1940) (citations omitted). It is presumed that statutes that relate to the same subject matter were enacted in accord with the same general legislative policy. *Id.* at 344, 294 N.W. at 372. Where two statutes in pari materia are construed together, and one statute contains provisions omitted from the other statute, the omitted provisions will be applied in proceedings involving the statute that does not contain the provisions, where not inconsistent with that statute's purposes. *Id.* at 346, 294 N.W. at 372.

 Hennepin County respondents argue that the plain meaning of section 276.19 is clear and unambiguous and that it provides a separate cause of action for overpayments. *See State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn. 1996) (concluding if statute is unambiguous, court may engage in no further statutory construction and must apply plain meaning). Although the plain-meaning rule is well established, "our inquiry does not end with the literal words of the statute." *Wegener v. Commissioner of Revenue*, 505 N.W.2d 612, 614 (Minn.1993). The *Wegener* court reminds us:

"[C]anons of construction are not the masters of the courts, but merely their servants, to aid them in ascertaining the legislative intent; and when it is ascertained the statute must be so construed as to give effect to such intention, even if it seem[s] contrary to such rules and the strict letter of the statute."

*Id.* (first alteration in original) (quoting *Winters v. City of Duluth*, 82 Minn. 127, 129, 84 N.W. 788, 789 (1901) (quotation omitted)).

■ The Minnesota Supreme Court has determined that the legislative intent of chapter 278 is "to provide an adequate, speedy, and simple remedy for any taxpayer to have the validity of his claim * * * determined by the district court" in matters involving assessments. *Land O'Lakes*, 225 Minn. at 548, 31 N.W.2d at 665. To interpret section 276.19 as providing a cause of action for *all* overpayments, including those of assessment and illegal tax, would negate section 278.01 and directly contradict legislative intent. *See State v. Wagner*, 555 N.W.2d 752, 754 (Minn.App.1996) (noting interpretation that would give no effect to statute is to be avoided). This court will not consider section 276.19 independent of section 278.01. *See Wegener*, 505 N.W.2d at 614 (stating "a statute * * * cannot be considered independently of its subject matter" (quotation omitted)); *Grossman v. Aerial Farm Serv., Inc.*, 384 N.W.2d 488, 489 (Minn. App.1986) (stating it is assumed legislature will not engage in futile act nor assign statute intent that will bring about absurd result).

Section 276.19 establishes the notice procedures to be followed when a county discovers that a landowner has made an overpayment; this statute does not create an independent cause of action. If the legislature had intended section 276.19 to abrogate the longstanding rule in section 278.01, it would have expressly repealed section 278.01. The Hennepin County district court erred when concluding that

Minn.Stat. § 276.19 established a separate cause of action.

## III. Constitutional Claims

The Dakota County district court did not address the constitutional claims, but the Hennepin County district court concluded that Hennepin County respondents could recover on their constitutional claims. We will, therefore, limit our discussion to the Hennepin County case. *See Thiele*, 425 N.W.2d at 582 (holding only issues presented to and considered by district court will be considered on appeal).

### A. Due Process

■ This court will exercise its power to find a law unconstitutional only when absolutely necessary and when the law is unconstitutional beyond a reasonable doubt, not merely because it may be bad policy or bad economics. *National Can Corp. v. Commissioner of Revenue*, 437 N.W.2d 416, 421 (Minn.1989). Respondents have the burden of demonstrating a violation of some provision of the Minnesota Constitution beyond a reasonable doubt. *See In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989) (stating party challenging statute has burden of demonstrating violation of Minnesota Constitution beyond reasonable doubt).

■ "[T]he due process clause requires that deprivation of property be preceded by notice and an opportunity for a hearing appropriate to the case." *Contos v. Herbst*, 278 N.W.2d 732, 742 (Minn.1979) (citation omitted). Hennepin County respondents allege inadequate notice was given in their tax statements to alert them that the calculation of their taxes was incorrect. Hennepin County respondents are essentially challenging the notice provision of Minn.Stat. § 276.04, subd. 2 (1998), which describes the necessary contents of tax statements. But Hennepin County respondents do not dispute that the statutorily mandated information was provided in their tax statements. Further, Hennepin County respondents do not cite

any persuasive caselaw establishing that the notice provision of Minn.Stat. § 276.04, subd. 2, is unconstitutional. Hennepin County respondents also argue the one-year statute of limitations associated with a chapter 278 proceeding deprives them of their property without a hearing, essentially challenging the constitutionality of section 278.01. But Hennepin County respondents failed to cite any persuasive caselaw establishing that the deadline for filing an objection under chapter 278 is unconstitutional.

■■■ Finally, Hennepin County respondents argue their fundamental right to due process was violated because there was no meaningful pre-deprivation opportunity to challenge the property taxes before paying them. Exaction of a tax constitutes a deprivation of property, and the state must provide procedural safeguards to satisfy due process. *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36, 110 S.Ct. 2238, 2250, 110 L.Ed.2d 17 (1990). But the state need not provide a pre-deprivation process for challenging the validity of taxes. *Id.* at 37, 110 S.Ct. at 2250. In *McKesson* and cases that followed, a tax statute was first found to be unconstitutional, and only then did this determination trigger post-deprivation relief. *See Id.* at 31, 110 S.Ct. at 2247 (noting Florida Supreme Court first found tax statute unconstitutional); *see e.g., Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 100, 113 S.Ct. 2510, 2519, 125 L.Ed.2d 74 (1993) (noting where tax statute first found unconstitutional, state law left to secure appropriate remedy for relief).

Finally, no court has invalidated a statute-of-limitations requirement under *McKesson. See Atkins v. Department of Revenue*, 320 Or. 713, 894 P.2d 449, 455–56 (1995) (declining to extend *McKesson* to invalidate statute of limitations in Oregon tax statute). The *McKesson* Court itself commented on a state's freedom to impose various procedural requirements on actions for post-deprivation relief stating, "[T]he State might, for example, * * *

enforce relatively short statutes of limitations * * *." *McKesson*, 496 U.S. at 45, 110 S.Ct. at 2254–55. Hennepin County respondents have not demonstrated that they can prove either the notice requirement or the one-year statute of limitations is unconstitutional. The Hennepin County district court erred when concluding that respondents could recover for a denial of due process.

### B. Equal Protection

■■■ Hennepin County respondents argue the distinction between the taxpayers who received the tax break on one parcel of property and respondents, who did not, is arbitrary and violates the Uniformity Clause of the Minnesota Constitution and the Equal Protection Clause of the United States Constitution. Minn. Const. art. X, § 1; U.S. Const. amend. XIV. Although respondents claim they are not challenging the validity of section 278.01, they do not deny they must prove beyond a reasonable doubt that: (1) at least two classes are created by the statute; (2) the classes are treated differently under the statute; and (3) the difference in treatment cannot be justified. *See Westling*, 581 N.W.2d at 820 (explaining test under which statute may be found unconstitutional as violation of equal protection).

■■■ Hennepin County respondents' equal-protection claim fails because they cannot meet the first requirement. The legislature did not create two separate classes of commercial or industrial property within class 3a. Hennepin County respondents do not argue this point, but argue that Hennepin County appellants' mistakes when applying the statute created the arbitrary classification. But appellants cannot create a classification where the legislature has not already done so. *See Cold Spring Granite Co.*, 271 Minn. at 466, 136 N.W.2d at 787 (stating propriety of classification for purpose of legislation is primarily for legislature). Respondents have not proved beyond a reasonable doubt that appellants have violated their

equal-protection rights. Thus, the Hennepin County district court erred by concluding that respondents can recover under their constitutional claims of equal protection or due process.[7]

## IV. Equitable Remedies

 Both Hennepin and Dakota County appellants argue that respondents cannot recover under the equitable theories charged in the complaints. Both Hennepin and Dakota County respondents requested relief under the equitable theories of: (1) recovery of money had and received; (2) recovery of money paid by mistake; (3) breach of an implied-in-law contract; and (4) unjust enrichment. Generally, a taxpayer may not maintain a suit in equity to recover tax payments if the taxpayer has a remedy at law. *See Adelman v. Onischuk*, 271 Minn. 216, 228, 135 N.W.2d 670, 678 (1965) (stating "relief against erroneous or illegal assessments will not be granted by a court of equity if the property owner has an adequate remedy at law"); *Rosso v. Village of Brooklyn Ctr.*, 214 Minn. 364, 368, 8 N.W.2d 219, 221 (1943) (emphasizing taxpayer may not maintain suit in equity to enjoin collection of tax or assessment when there exists adequate remedy at law). But under these circumstances, we conclude that respondents have valid claims in equity because they cannot recover under section 278.01 for the errors made by the counties when computing their taxes.

 The Dakota County district court concluded that Christian could recover under the theory of money had and received. The district court reasoned that Christian paid his taxes under a mistake of fact because he justifiably relied on the correctness of his tax statement. *See Sloan v. City of Duluth*, 194 Minn. 48, 54, 259 N.W. 393, 396 (1935) (noting city officers had knowledge of credits to which taxpayer entitled and noting it was not probable

taxpayer would knowingly pay anything in excess of legal requirement). Dakota County appellants dispute this conclusion, arguing the assessor made a mistake of law, because prior to 1994, the assessor misunderstood how to apply the statute. Even if we were to accept that the assessor made a mistake of law, Minnesota courts have determined that equity can grant relief from a unilateral mistake of law. *Peterson v. First Nat'l Bank*, 162 Minn. 369, 376, 203 N.W. 53, 55 (1925); *see also Minnesota Mut. Fire & Cas. Co. v. Rudzinski*, 347 N.W.2d 848, 851 (Minn. App.1984) (holding equity can grant relief from mutual mistake of law even if mistake of fact is not present), *review denied* (Minn. Dec. 20, 1984). Thus, the district court can grant relief under this theory. We affirm the Dakota County district court's conclusion that Christian can recover under the theory of money had and received.

Although the Hennepin County district court refused to grant summary judgment to appellants, it did not specifically address respondents' equitable theories. But it is clear that because equitable relief is not barred, respondents may recover their overpayments if they are able to prove one of the equitable theories charged in their complaint. Although we have concluded the Hennepin County respondents cannot recover under section 276.19 or under their constitutional theories, the Hennepin County district court properly refused to dismiss all equitable claims on summary judgment.

Finally, Dakota County argues relief under the equitable theories is barred by laches. We are not sure how Dakota County reaches this argument. But we need not address it. The Dakota County District Court did not address the application of the doctrine of laches to the case before it. Therefore, we will not consider the doctrine's application. *See Thiele*, 425

---

7. Because Hennepin County respondents' constitutional claims fail on the merits, we will not address Hennepin County's claim of governmental immunity or its claim under the Tax Injunction Act, 28 U.S.C. § 1341 (1994).

N.W.2d at 580 (stating appellate court generally may consider only issues raised to and *considered by* the district court).

## V. Injunctive Relief, Declaratory Judgment, and Abatement

Hennepin County appellants argue that Hennepin County respondents' claims for injunctive relief and declaratory judgment are invalid because respondents are limited to claims under section 278.01. *See* Minn.Stat. § 275.26 (1998) (stating if county levied excess taxes, taxpayer may bring action to enjoin collection of such taxes and correct levy); Minn.Stat. ch. 555.01–.16 (1998) (Uniform Declaratory Judgments Act). Because we have rejected appellants' argument that section 278.01 is the exclusive remedy by which Hennepin County respondents can challenge the errors made in calculating their taxes, this relief is theoretically possible. However, injunctive or declaratory relief will be unnecessary unless the respondents establish that the counties continue to tax them improperly.

Hennepin County appellants argue that Hennepin County respondents' demand for abatement under Minn.Stat. § 375.192, subd. 2 (1998), fails to state a claim on which relief can be granted and the district court lacks jurisdiction to entertain this claim. Hennepin County respondents requested abatement for 1994 and 1995. Their 1996 abatements were granted. An abatement for clerical errors may be considered and granted for the year of application as well as for the two prior years. Minn.Stat. § 375.192, subd. 2. A clerical error is defined as "a mistake in the clerical work of transcribing the particular record." *Wilson v. City of Fergus Falls*, 181 Minn. 329, 332, 232 N.W. 322, 323 (1930).

Hennepin County has not explained how the errors in establishing the tax obligations for the respondents were made.

Accordingly, Hennepin County respondents may recover if they can establish that the mistake was the result of a clerical error. This material question of fact precludes summary judgment for Hennepin County.

## DECISION

Minn.Stat. § 278.01 (1998) is not the exclusive remedy by which respondents can challenge errors made when calculating their property taxes. We affirm the Dakota County district court's decision that Christian can recover in equity. We also affirm the Hennepin County district court's denial of summary judgment. Although Hennepin County respondents cannot recover under Minn.Stat. § 276.19 (1998) or on constitutional grounds, they may be able to recover in equity or by abatement.

**Affirmed.**

DANIEL F. FOLEY, Judge (dissenting).

I respectfully dissent. I would hold that Minn.Stat. § 278.01 (1998)[1] is the exclusive remedy under which Hennepin and Dakota County respondents can recover the overpayments. I agree with the majority that the legislature did not create a "preferred" classification within class 3a properties. But I do not agree that the legislature intended that a taxpayer could challenge overpayments by any remedy other than section 278.01.

A taxpayer may bring a claim in district or tax court for

> property [that] has been partially, unfairly, or unequally assessed in comparison with other property in the * * * county * * * or that the parcel has been assessed at a valuation greater than its real or actual value, or that the tax levied against the same is illegal, in whole or in part, or has been paid, or

1. Although the Hennepin County and Dakota County complaints were filed in different years, I will use the 1998 statute because it does not substantially change this analysis.

that the property is exempt from the tax so levied * * *.

Minn.Stat. § 278.01, subd. 1. The legislature enacted this statute to "provide an adequate, speedy, and simple remedy for any taxpayer to have the validity of his claim, defense, or objections determined by the district court." *Land O'Lakes Dairy Co. v. Village of Sebeka,* 225 Minn. 540, 548, 31 N.W.2d 660, 665 (1948). The legislature broadly included assessment errors, illegal taxes, and exemptions from tax. I believe that the legislature intended for all errors made during the assessment process to be included under this statute.

The duties of the county assessor have been historically viewed as fact-finding responsibilities. *See B.W. & Leo Harris Co. v. Dakota County,* 246 Minn. 20, 25, 74 N.W.2d 111, 114 (1955) (describing assessor's fact-finding duties of viewing property, determining value, and entering value in assessment books). Classification of properties is a fact-finding process included among the assessment duties of the county assessor and can only be challenged under section 278.01. *Summit House Apartment Co. v. Hennepin County,* 312 Minn. 358, 362, 253 N.W.2d 127, 129 (1977). Similarly, whether or not a taxpayer receives a tax break based on ownership under Minn.Stat. § 273.13, subd. 24(a) (Supp.1993) is a fact-finding responsibility. The record reflects: (1) in both Hennepin and Dakota Counties, the county assessor is responsible for determining whether a property receives the lower tax rate based on ownership; (2) although the auditor provides the ownership lists, in Hennepin County the lists are updated by the assessor's office; and (3) in both Hennepin and Dakota Counties, the tax rates based on ownership are applied in the assessment books before they are returned to the county auditor. The county auditor has been given the responsibility of overseeing the assessor's duties. *See* Minn.Stat. §§ 274.05, .09 (1998) (detailing procedure when auditor receives assessment books from assessor, noting that au-

ditor should examine books and correct any errors). But the county assessor makes the initial determination of whether one taxpayer owns multiple properties, and is entitled to a lower tax rate on one of those properties. This fact-finding responsibility is an assessment duty that may only be challenged under section 278.01.

Because I believe section 278.01 is the exclusive remedy by which respondents can challenge the discrepancies in their tax bills, the statute of limitations has passed, and relief is barred. Minn.Stat. § 278.01, subd. 1. As a result, respondents cannot recover under any equitable theories or by abatement. *See Rosso v. Village of Brooklyn Center,* 214 Minn. 364, 367, 8 N.W.2d 219, 221 (1943) (holding taxpayer cannot maintain suit in equity to enjoin tax collection when an adequate remedy at law exists).