STATE EX REL. J. J. MERGENS AND ANOTHER v. CHARLES M. BABCOCK AND OTHERS.[1]

November 30, 1928.

No. 26,924.

**Construction of statutes.**

1. Statutes relating to the same subject are to be construed to give effect to all if this may reasonably be done. In so far as they are inconsistent, the latest controls. A statute which is plain and unambiguous must be given the effect intended by the language used.

**Contract for constructing state highway disapproved.**

2. L. 1925, c. 426, creating the commission of administration and finance, modifies and amends the prior highway act to the extent of placing the making of contracts for constructing state highways under the control of that commission; and where a contract for such work made by the highway department is disapproved by the commission, it does not go into effect and delivery thereof cannot be compelled by mandamus.

**Rule stated inapplicable to amendment of state highway act.**

3. The rule that a later general statute does not affect the special provisions of a prior special statute does not apply, for c. 426 expressly modifies and amends the highway act.

**Powers of state highway commissioner subject to limitations of 1925 act.**

4. Although the provision of the highway act defining the powers of the commissioner of highways was amended and re-enacted at the session of the legislature which enacted c. 426, such powers are subject to the limitations imposed by the latter act by the express provisions thereof.

**Commission of administration and finance had discretion to disapprove highway contract.**

5. The commission possessed the discretionary power to disapprove the contract with the relators on the ground that the proposal of another bidder was lower when given the meaning which the commission found was intended therein.

Highways, 29 C. J. § 298 p. 573 n. 38; § 309 p. 584 n. 73.
Statutes, 36 Cyc. p. 1107 n. 31; p. 1147 n. 25, 30; p. 1151 n. 58.

See 25 R. C. L. 1004; 4 R. C. L. Supp. 1615; 6 R. C. L. Supp. 1498; 7 R. C. L. Supp. 860.

[1]Reported in 222 N. W. 285.

Respondents Henry Rines, H. W. Austin and A. J. Peterson, constituting the commission of administration and finance, appealed from a judgment of mandamus of the district court for Ramsey county, McNally, J. directing them and respondent Charles M. Babcock as commissioner of highways to deliver and file a contract executed by relators, doing business as J. J. & M. S. Mergens, for the performance of certain highway work, which contract had been approved by respondent Babcock but disapproved by respondent commission on the ground that a lower bid had been received. Reversed.

G. A. Youngquist, Attorney General, and William H. Gurnee, Assistant Attorney General, for appellants (respondents below).

Wright & Wright and A. W. Bowen, for respondents (relators below).

TAYLOR, C.

The commissioner of highways advertised for bids for constructing a section of trunk highway No. 5 and received several bids therefor. He awarded the work to the relators as the lowest bidders and executed a contract with them which he sent to the commission of administration and finance for approval. That commission disapproved the contract on the ground that one Martin Wunderlich was a lower bidder; and because of such disapproval the commissioner of highways refused to deliver or file the contract. Thereupon the relators procured an alternative writ of mandamus from the district court of Ramsey county directed to the commissioner of highways and to the members of the commission of administration and finance in their official capacity to compel the delivery of the contract. The trial resulted in a judgment directing the issuance of a peremptory writ. The members of the commission of administration and finance appealed therefrom.

The controlling question presented is whether the commission of administration and finance is given power to disapprove, and thereby render of no effect, contracts for the construction of trunk highways executed by the commissioner of highways. No constitutional

question is involved as the authority of both is conferred by and rests upon statute.

In enacting statutes the legislature is presumed to know and have in mind all existing laws relating to the same subject matter or affected by the new enactment. If different statutes relating to the same subject matter may fairly be construed so as to give full effect to all, it is the duty of the court so to construe them. In so far as they are inconsistent, the latest expression of the legislative will controls. Where the language of a statute is plain and unambiguous and leads to no absurdity, there is no room for construction and it must be given effect according to its terms. 6 Dunnell, Minn. Dig. (2 ed.) §§ 8927, 8938, 8939, 8940.

The office of commissioner of highways was created and the powers and duties of the commissioner were declared and defined by L. 1921, p. 406, c. 323, known as the public highways act. This act, as amended in a few minor particulars not here material, is G. S. 1923, §§ 2542-2620. It gave the commissioner of highways power to locate, construct, improve and maintain the trunk highways of the state and to let all necessary contracts therefor. It provided for receiving bids for construction work but gave him power to reject all bids if unsatisfactory, and either to readvertise or have the work performed by labor employed by himself. That it gave him ample power to make the contract in controversy is conceded. The question is whether the power so conferred has been limited by subsequent legislation.

L. 1925, p. 756, c. 426, was enacted for the purpose of reorganizing the state government and consists of 20 articles. Art. I creates and establishes 14 departments and agencies of the state government, including a department of administration and finance and a department of highways, and then declares that:

"All of said departments and all officials and agencies of the state government shall be subject to the provisions and limitations of this act."

Art. XI reads:

"The Department of Highways as now created under the title of the commissioner of highways is hereby continued in charge of the commissioner of highways, who shall have and exercise the rights and powers and perform the duties now prescribed by law, subject to the limitations of this act."

Art. III, § 1, places the department of administration and finance under the supervision and control of the commission of administration and finance consisting of three members to be known respectively as the comptroller, the commissioner of the budget, and the commissioner of purchases. That body is designated in the act as the "commission" and will be intended by that term when used hereafter. Section 3 of the same article gives the commission power

"to supervise and control the accounts and expenditures of the several officials, departments, and agencies of the state government and of the institutions under their control; the making of all contracts and the creation or incurrence of all financial or contractual obligations; * * *."

Section 4 of the same article gives the commission power to purchase all

"tools, machinery, and materials to be used by the state in the construction and maintenance of state highways."

Section 5 of the same article provides that no appropriation to "any official, department, or agency of the state government * * * shall become available for expenditure" until an estimate in advance shall have been submitted to and approved by the commission.

Art. XX, § 2, states:

"All other acts or parts of acts now in effect inconsistent with the provisions of this act are hereby superseded, modified, or amended to conform to and give full force and effect to the provisions of this act."

Chapter 426 continues the highway commissioner in charge of the highway department but expressly makes him subject to that act.

It also supersedes, modifies and amends all other acts or parts of acts inconsistent therewith to the extent necessary to make them conform to that act and give full force and effect to its provisions. It continues the highway act in force, but only as so modified and amended. It is the plain purpose of the act to give the commission power to supervise and control the making of all contracts and the incurrence of all financial or contractual obligations by any of the several departments or agencies of the state. State ex rel. University of Minnesota v. Chase, 175 Minn. 259, 220 N. W. 951; State ex rel. Yapp v. Chase, 165 Minn. 268, 206 N. W. 396. This necessarily includes the power to prevent the making of a contract of which the commission disapproves. It was within the province of the legislature to place such limitations upon the power of the commissioner of highways and to provide for such supervision and control over his official acts as it deemed proper. It has used language so plain and explicit that there can be no doubt of the legislative intention, and that intention must be given effect. 6 Dunnell, Minn. Dig. (2 ed.) §§ 8938, 8940, and cases there cited.

The relators urge that the highway act is a special act which completely covers the matter of the powers and duties of the commissioner of highways, and cite various decisions of this and other courts to the effect that a later general statute does not repeal or affect the special provisions of an earlier special statute unless it manifests an intention to do so. The instant case does not come within the rule invoked, for here the later statute expressly modifies and amends the earlier to conform thereto. State ex rel. Seng v. Peter, 101 Minn. 462, 112 N. W. 866; State v. Western Union Tel. Co. 111 Minn. 21, 124 N. W. 380, 126 N. W. 403.

G. S. 1923, § 2554, the section of the highway act defining the powers of the commissioner of highways, was amended by L. 1925, p. 430, c. 341, approved one day prior to the approval of c. 426. The amendment made no change in the substance of the section so far as it relates to the powers of the commissioner of highways. The relators argue that by re-enacting § 2554 the legislature intended to give the commissioner of highways the powers specified therein free from the limitations of c. 426. In support of this claim

they cite cases such as McMaster v. Gould, 240 N. Y. 379, 148 N. E. 566, 40 A. L. R. 792; People ex rel. Kell v. Kramer, 328 Ill. 512, 160 N. E. 60; and Commonwealth v. King, 202 Mass. 379, 88 N. E. 454, to the effect that statutes relating to the same subject passed at the same session by the same legislature should be construed together so as to give effect to all and form a harmonious whole. Their contention is not in accord with the rule they cite for it ignores the later act. The two must be construed together, and the later must be given effect as modifying, supplementing, and limiting the earlier in the respects and to the extent specified therein.

The relators also cite State ex rel. Junk v. Herrick, 107 Ohio St. 611, 140 N. E. 314, in support of their contention. The Ohio administrative code there considered differs materially from our reorganization act. The Ohio court held that the director of finance created by the administrative code could not prevent the making of a contract for road improvements by the director of highways on the ground that the code did not give him power to control the making of such contracts, but the court recognized that the provisions of the code must be given effect according to their terms.

In 1921 the state of Michigan created a state administrative board and gave it supervisory control over all administrative departments. None of the Michigan decisions to which our attention has been called involved the question here presented; but the Michigan court recognizes that the "supervisory control" given to the administrative board gives that board the right to control the expenditures of the several departments except as otherwise provided by the constitution. Groesbeck v. Auditor General, 216 Mich. 243, 249, 189 N. W. 870, 21 A. L. R. 249; State Board of Agriculture v. Auditor General, 226 Mich. 417, 197 N. W. 160.

Although having no direct bearing on the present case, the decisions of the Pennsylvania court sustaining the constitutionality of the administrative code of that state and applying its provisions are of value. Commonwealth ex rel. Atty. Gen. v. Snyder, 279 Pa. 234, 123 A. 792; Commonwealth ex rel. Atty. Gen. v. Lewis, 282 Pa. 306, 127 A. 828; Piccirilli Bros. v. Lewis, 282 Pa. 328, 127 A. 832.

Whether the bid of the relators or that of Wunderlich was the lowest has been argued at length by both parties. The proposals contained a large number of items and named a specific price for each. Which bid was the lowest depends upon the interpretation placed on the bid of Wunderlich for "excavation overhaul." The bid of the relators on this item was .01¼ per cubic yard, which all parties read as 1¼ cents per cubic yard. The bid of Wunderlich was 0.1 per cubic yard, which the highway department read as 10 cents per cubic yard. This brought the Wunderlich bid far above that of the relators. But the commission took the position that the decimal point had obviously been misplaced and that the bid intended was 1 cent per cubic yard, and Wunderlich claimed that such was the fact. Giving it that meaning his bid was more than $5,000 below that of the relators. We have no occasion to determine the controversy over this bid, for the commission in disapproving the letting of the contract to the relators was exercising the power given it by the statute, and we cannot say that it exceeded the power vested in it by the statute. When an executive or administrative body determines a matter involving the exercise of its discretionary power, the courts do not interfere. 4 Dunnell, Minn. Dig. (2 ed.) § 5753, and cases cited; 38 C. J. 745, and cases cited.

Judgment reversed.

HILTON, J. took no part.