WEYERHAEUSER COMPANY, Relator,

v.

COUNTY OF RAMSEY, Respondent.

No. C5–90–593.

Supreme Court of Minnesota.

Nov. 9, 1990.

Rehearing Denied Dec. 20, 1990.

Richard M. Gaalswyk, Maun & Simon, St. Paul, for relator.

Tom Foley, Ramsey County Atty. by Ralph Peterson, Asst. County Atty., St. Paul, for respondent.

COYNE, Justice.

Certiorari on the relation of Weyerhaeuser Company to review a decision of the tax court determining that its property was not unfairly or unequally assessed in comparison with similar property in the City of St. Paul. Relator had petitioned for review of the real estate tax assessment of January 2, 1987, claiming that its property at 700 Emerald Street in the City of St. Paul, County of Ramsey, had been both overvalued and unfairly and unequally as-

sessed. The district court transferred the petition to the tax court, which determined that the assessor had indeed overvalued relator's property in estimating its market value at $1,600,000. The relator estimated the market value of its property at $1,050,000 while Ramsey County introduced evidence of a market value of $1,875,000. The tax court found that the fair market value of the property was $1,100,000 and directed that the assessor's estimated market value for the subject property be reduced on the books and records of Ramsey County and that the real estate taxes due and payable in 1988 be recomputed. The tax court found, however, that the subject property was not unfairly or unequally assessed in comparison with similar property in the City of St. Paul. Not content with the reduction thus obtained, relator contends before this court that it is entitled on constitutional grounds to have its industrial property equalized with residential property in Ramsey County pursuant to the 1987 assessment/sales ratio study issued by the department of revenue. We reject the relator's contention and affirm the tax court's decision.

■ The relator argues that the assessor's estimated market value of $1,600,000 represents a valuation equal to approximately 145% of the market value determined by the tax court and is, therefore, clearly an unequal assessment because the median assessment for residential property in Ramsey County was only 89.7% of the actual market value of those properties. The argument is misconceived. By statute, assessors are required to value all property (with certain exceptions not material here) at its market value, and a tax levied against property assessed at a valuation greater than its real or · actual value is illegal. Minn.Stat. §§ 273.11, subd. 1 and 278.01, subd. 1 (1988); *Kuiters v. County of Freeborn*, 430 N.W.2d 461, 463 (Minn. 1988). Therefore, once overvaluation has been demonstrated, the taxpayer is entitled to have the estimated market value of the property reduced to the market value determined by the tax court. When estimated market value has been reduced to the amount set by the tax court, the taxpayer

has established the first requirement in proving a claim of unequal assessment: the taxpayer has proved an assessment level of 100% of the value of its property. *United National Corp. v. County of Hennepin*, 299 N.W.2d 73, 75–76 (Minn.1980). At that point, however, the inquiry shifts to the assessment levels of other properties within the taxing district, for "[t]o determine whether a property has been unequally assessed, its actual market value and real estate tax assessment must be compared with the market value and real estate tax assessments of other properties." *Id.* at 76. We have previously approved the use of assessment/sales ratio studies to make that comparison. *In Re Objections to Real Property Taxes*, 353 N.W.2d 525, 532–33 (Minn.1984). These studies involve a comparison of the adjusted sales prices of properties recently sold with the assessor's estimated market value of those same properties. Note, *Grounds and Procedures for Attacking Real Property Tax Assessments in Minnesota*, 4 Wm. Mitchell L.Rev. 371, 392 (1978). If there is a "substantial disparity" between the taxpayer's assessment level and the assessment level of other properties in the taxing district, then the taxpayer has demonstrated an unequal assessment, and the appropriate measure of relief is a reduction of the property assessment to the assessment level of the other properties. *Real Property Taxes*, 353 N.W.2d at 530.

The Department of Revenue's 9–month assessment/sales ratio study for 1987 includes these ratios:

| Ramsey County | 91.7% | City of St. Paul | 92.5% |
|---|---|---|---|
| Residential | 89.7% | Residential | 90.3% |
| Commercial/ | | Commercial/ | |
| Industrial | 92.5% | Industrial | 94.3% |

■ The taxpayer contends that it is entitled to have its property assessed at the county residential median assessment level of 89.7%. It seems to us, however, that the city in which the subject property is located may properly be designated as the taxing district for purposes of comparing assessment levels when the city assessment level ratios are based, as they are here, on a number of sales that is large enough to

validate the study.[1] Moreover, the taxpayer is not entitled to step outside the applicable class of property and to insist upon relief.

◾ The taxpayer also complains of the tax court's long-standing policy of denying relief if the assessment level evidenced by the assessment/sales ratio study exceeds 90%.[2] That estimating the market value of real property is, at best, an imprecise science is reflected in the United States Supreme Court's observation that "the constitutional requirement is the seasonable attainment of a rough equality in tax treatment of similarly situated property owners." *Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336, 343, 109 S.Ct. 633, 638, 102 L.Ed.2d 688, 697 (1989). We have stated the concept somewhat more formally:

> Assessment practices which result in a taxpayer's property being valued 'at a substantially higher percentage of its market value than is other property in the taxing district' violate the uniformity requirements of the state and federal constitutions.

*Kuiters v. County of Freeborn*, 430 N.W.2d at 463, and cases cited therein.

The 1987 assessment/sales ratio studies disclose that one-half of all the property sold in Ramsey County was assessed at a level of more than 91.7% and that sold in the City of St. Paul at more than 92.5%, and they demonstrate also that one-half of all the commercial/industrial property sold in Ramsey County and St. Paul were assessed at levels in excess of 92.5% and 94.3% respectively. We agree with the tax court that these median assessment levels, when compared to the assessment level of the taxpayer's property, do not reflect a substantial disparity violative of either state or federal constitution.

◾ Finally, the relator argues that the tax court erred in taking judicial notice of the assessment ratios for 1986 and 1988 without first notifying the parties. *See In re Objections to Real Property Taxed*, 353 N.W.2d 525, 534 (Minn.1984). It appears to us that the tax court did not base its determination on 1986 and 1988 assessment/sales ratio studies but only referred to them in explaining his reasons for denying relator's motion for a new trial. In any case, we have previously recognized that "unjustified judicial notice is harmless error where the decisive issue as determined by the trial court is clearly sustained by the evidence." *Northerly Centre Corp. v. County of Ramsey*, 311 Minn. 335, 342, 248 N.W.2d 923, 927 (1976). In short, the evidence more than adequately supports the trial court's determination that the taxpayer's property had been overvalued but that when the assessor's estimated market value was adjusted to comport with the tax court's determination of market value, the subject property as not unfairly or unequally assessed in comparison with similar property in the City of St. Paul.

Affirmed.

---

1. The phrase "city or county" was added as part of 1980 Minn.Laws ch. 443, § 2. It appears that the bill changing the phrase "taxing district" to "city or county" was drafted by the tax court and introduced at its behest, a circumstance which suggests that the language was not designed to strip the tax court of its discretion. Hearing on S.F.1853, S.Jud.Comm., 71st Minn. Leg., March 8, 1980 (audiotape). In the subsequently expressed opinion of Judge Earl B. Gustafson, who testified before Senate and House committees that debated the amendment, the amendment served only to expand the term "taxing district" to include counties:

> What constitutes the same "taxing districts" has been *expanded* by statute. Minnesota case law, after the *Hamm* [*v. State*, 255 Minn. 64, 95 N.W.2d 649 (1959),] decision, interpreted the "same taxing district" to be the city or township where the property was located. This was changed by the 1980 legislature. Comparisons may now be made with property *throughout the same county*.

Gustafson, *Challenging Unequal Property Tax Assessments in Minnesota*, 13 Wm. Mitchell L.Rev. 461, 468 (1987) (citations omitted) (emphasis in original).

2. The tax court's practice of granting equalization relief only when the applicable assessment level ratio falls below 90% has now been codified as Minn.Stat. § 278.05, subd. 4(d) (1989), but the statute is not applicable in this case.