**PROGRAMMED LAND, INC.,**
**et al., Respondents,**

v.

**Patrick O'CONNOR, in his capacity as Treasurer and Auditor for Hennepin County, et al., petitioners, Appellants,**

and

**Harold Christian, individually, and on behalf of all others similarly situated, Respondent,**

v.

**Thomas Novak, in his capacity as Treasurer and Auditor for Dakota County, et al., Appellants.**

Nos. CX–99–777, C7–99–1210.

Supreme Court of Minnesota.

Sept. 20, 2001.

OPINION

ANDERSON, RUSSELL A., Justice.

Respondent taxpayers seek to recover real property tax overpayments resulting from the erroneous application of property tax class rates. The court of appeals held that the application of the wrong class rate

was not an assessment error and therefore not subject to challenge under Minn.Stat. § 278.01, subd. 1 (2000). The court also ruled that respondents could not seek refunds based on the class rate error under Minn.Stat. § 276.19 (1998) or based on their constitutional arguments. Because no statutory or constitutional remedy was available, the court concluded that respondents can proceed under common law and equitable theories. We conclude that Minn.Stat. § 278.01 does cover the claims asserted by respondents, and because a statutory procedure was available, common law and equitable remedies are not. Respondents' claims are time-barred under the provisions of section 278.01, subdivision 1. We agree with the court of appeals that respondents cannot seek refunds based on the class rate error under Minn.Stat. § 276.19. We also agree with the court of appeals that respondent cannot seek refunds on constitutional grounds.

Respondent Harold Christian owned a vacant commercial lot in Dakota County between 1971 and 1997. In 1991, the legislature abolished the vacant land classification effective for taxes payable in 1993,[1] and the Dakota County Assessor, pursuant to Minn.Stat. § 273.13, subd. 24 (Supp. 1993), classified the parcel as class 3(a). For taxes payable in 1993, class 3(a) property was valued for taxation purposes at a rate of 5.06 percent of market value, except that the first $100,000 of market value of one property per owner in the county was valued at a reduced rate of three percent. Minn.Stat. § 273.13, subd. 24. The Dakota County Assessor did not apply the reduced class rate to which Christian's

property was entitled, and, as a result, Christian overpaid his taxes for taxes payable in 1993 and 1994. Christian brought a timely challenge to his taxes payable in 1994 under Minn.Stat. § 278.01, subd. 1 (a chapter 278 petition), and after confirming with the Minnesota Department of Revenue that the reduced class rate applied to vacant class 3(a) property, the Dakota County Assessor adjusted Christian's taxes for taxes payable in 1994 and applied the reduced class rate thereafter. In 1997, Christian filed a complaint with the county to challenge his taxes payable in 1993, but Dakota County refused to refund the excess taxes paid because the period within which to file a chapter 278 petition or to apply for an abatement under Minn.Stat. § 375.192 (Supp.1997) had lapsed.[2]

Following a court trial on stipulated facts, the Dakota County District Court ruled that chapter 278 did not apply under the circumstances and that Christian was entitled to a refund under the theory of money had and received for excess taxes paid in the amount of $1,988.04 plus prejudgment interest. The trial court rejected the county's argument that the misapplied class rate was an error in classification and thus an assessment error that must be challenged exclusively under chapter 278. The court concluded that the ultimate responsibility for applying the correct class rate belongs not to the assessor but to the auditor, who in this case failed to ensure that the correct rate was applied. The court characterized the auditor's error as "arithmetic" and, as such, not the type of error contemplated

1. Act of May 31, 1991, ch. 291, art. 1, § 23, subd. 31, 1991 Minn. Laws 1361, 1391.

2. In 1997, taxpayers had until March 31 of the year taxes were payable to file a chapter 278 petition. Minn.Stat. § 278.01, subd. 1. Taxpayers had until the end of the year taxes

were payable to apply for an abatement, unless the purported error was "clerical" or the taxpayer did not apply because of hardship, in which cases the taxpayer had an additional two years to apply for an abatement. Minn. Stat. § 375.192, subd. 2 (Supp.1997).

by the legislature when it enacted chapter 278.

In Hennepin County District Court, respondents Programmed Land and others brought an action in 1998 similarly alleging that the county failed to apply the reduced class rate to which their class 3(a) properties were entitled under Minn.Stat. § 273.13, subd. 24, and as a result they overpaid their real property taxes between 1987 and 1997. Hennepin County made class rate changes for taxes payable in 1997 and applied the reduced class rates thereafter and made abatements for taxes payable in 1996, but it rejected claims for refunds and applications for abatements for pay years 1987 to 1995 because respondents' claims and applications had not been timely filed pursuant to Minn.Stat. §§ 278.01, subd. 1 and 375.192.

The respondents brought an action in Hennepin County District Court seeking a declaration that they were entitled to relief under Minn.Stat. §§ 276.19 [3] and 375.192 and several common law, equitable and constitutional theories and seeking an injunction compelling the county to refund the amounts that the respondents alleged were overpaid. The county moved for summary judgment dismissing the respondents' actions, arguing that section 278.01 provides respondents' exclusive judicial remedy, that therefore there is no relief available under section 276.19 or under common law, equitable or constitutional theories, and further that the period for abatement applications under section 375.192 had lapsed. The district court de-

nied the county's motion for summary judgment, ruling that chapter 278 does not provide respondents' exclusive judicial remedy and that they could proceed to seek recovery of excess taxes paid under Minn.Stat. §§ 276.19 and 375.192 and under common law, equitable and constitutional theories. The court reasoned that chapter 278 does not provide a remedy for these claims because applying the erroneous class rate was not an assessment error but was instead the result of the auditor's failure to compile an accurate ownership list and fix the correct rates.

The court of appeals consolidated both cases for appeal and affirmed the district courts' rulings that respondents did not have a cause of action to challenge the erroneous class rates under section 278.01, subdivision 1 and could recover or proceed to seek recovery under common law and equitable theories. *Programmed Land, Inc. v. O'Connor*, 602 N.W.2d 895, 905 (Minn.App.1999), *rev. granted* (2000). The court reasoned that while all challenges to purported assessment errors must be brought, if at all, under chapter 278, the application of an erroneous class rate is not an assessment error. *Programmed Land*, 602 N.W.2d at 904–05. The court of appeals agreed with the district courts that the application of an erroneous class rate is not an error in classification, one aspect of the assessment process, reasoning that the reduced class rate does not constitute a separate class of commercial-industrial property, nor does the application of class rates require the assessor's discretionary

---

**3.** In 1998, section 276.19, subdivision 1 provided:

> If an overpayment of property tax arises on a parcel for any reason, the responsible county official shall promptly notify the payer by regular mail that the overpayment has occurred. The notice must state the amount of overpayment and identify the parcel on which the overpayment occurred.

> The notice must also instruct the payer how to claim the overpayment and advise that the overpayment is subject to forfeiture under this section. If the name or address of the payer is not known, the notice of unclaimed overpayment must be mailed to the taxpayer of record in the office of the county auditor.

decision making. *Id.* at 903–04. The court reversed the ruling of the Hennepin County District Court that respondents have a cause of action on federal and state constitutional due process and equal protection grounds, *id.* at 908, and under Minn.Stat. § 276.19, 602 N.W.2d at 906. The court held that respondents, having no statutory or constitutional remedy, may seek common law or equitable relief. *Id.* at 908–09.

■ While the cases come to us in different procedural postures, we are asked in both cases to review issues of law, which we do de novo. *Burlington N. R.R. Co. v. Comm'r of Revenue,* 606 N.W.2d 54, 57 (Minn.2000). For the purposes of this appeal the material facts are not in dispute. The counties applied the wrong class rates to respondents' class 3(a) property, and respondents, as a consequence, paid excess property taxes. The counties provided respondents with proper notice of their estimated and final property tax, but the notices did not contain information from which respondents could determine that the counties applied the wrong class rate. Finally, respondents paid the amount due as indicated on the erroneous tax statements and did not file timely claims challenging the erroneous property taxes under section 278.01, subdivision 1.

■ Our general rule is that a person who pays an illegal or irregular tax, even if ignorant that the tax is illegal or irregular, is not entitled to recover the tax in equity when that person has a statutory remedy by review, appeal or defense to proceedings to enforce the tax. *Gould v. Bd. of Comm'rs of Hennepin County,* 76 Minn. 379, 381, 79 N.W. 303, 303 (1899). The court of appeals held that respondents may recover in equity because chapter 278, section 276.19 and constitutional remedies do not provide relief for this type of claim. We must first consider, therefore, whether

respondents could have brought a claim under section 278.01, subdivision 1. If section 278.01, subdivision 1 provides a remedy for respondents' claims, respondents may not bring actions under section 278.01 because their claims are untimely. If so, we must then address whether respondents are provided an alternative remedy elsewhere in the statutes. Our third consideration is whether the means provided by statute to seek relief, if any, satisfy respondents' constitutional rights to due process and equal protection. If statutory mechanisms for relief are nonexistent or insufficient constitutionally, we will finally consider whether respondents may recover or proceed to recover under common law or equitable theories.

■ The issue at the heart of this case is the scope of Minn.Stat. § 278.01. subd. 1, which provides in relevant part:

Any person having personal property, or any estate, right, title, or interest in or lien upon any parcel of land, who claims that such property has been partially, unfairly, or unequally assessed in comparison with other property * * *, or that the parcel has been assessed at a valuation greater than its real or actual value, or that the tax levied against the same is illegal, in whole or in part, or has been paid, or that the property is exempt from the tax so levied, may have the validity of the claim, defense or objection determined by the district court of the county in which the tax is levied or by the tax court * * *. [T]he petitioner must file the copies [of a petition for determination] with proof of service * * * on or before March 31 of the year in which the tax becomes payable.

Section 278.01, subdivision 1 provides a cause of action to bring five types of challenges to property taxes within a limited time frame—by March 31 of the year taxes are payable.

■ The counties contend that any objection to property taxes[4] may be raised under section 278.01,[5] but we have not construed the statute that broadly. The counties rely primarily on *Land O'Lakes Dairy Co. v. Village of Sebeka,* where we said: "[W]hen the legislature enacted [chapter 278], it did so for the purpose of providing a rather simple remedy for the taxpayer to have his real estate grievances determined * * *." 225 Minn. 540, 548–49, 31 N.W.2d 660, 665 (1948). We explained, however, that chapter 278 provides an adequate cause of action "*so far as the determination of tax matters referred to in § 278.01 on real estate is concerned * * *.*" *Land O'Lakes,* 225 Minn. at 549, 31 N.W.2d at 665 (emphasis added). In the cases relied upon by the counties, *State v. Elam,* 250 Minn. 274, 84 N.W.2d 227 (1957), *Commissioner of Taxation v. Crow Wing County,* 275 Minn. 9, 144 N.W.2d 717 (1966), *Fichtner v. Schiller,* 271 Minn. 263, 135 N.W.2d 877 (1965), and *Land O'Lakes,* we held that chapter 278 provides the exclusive means to bring an action in court to challenge an assessment, one of the five listed types of challenges, but we did not conclude that chapter 278 provides the exclusive judicial means to make all property tax challenges. *Fichtner,* 271 Minn. at 267, 135 N.W.2d at 880; *Elam,* 250 Minn. at 276, 84 N.W.2d at 228; *Land O'Lakes,* 225 Minn. at 547, 31 N.W.2d at 664.[6] By its plain terms, section 278.01 does not provide a cause of action for all possible challenges to property taxes, and *Land O'Lakes* and other cases relied upon by the counties are consistent with that limitation.

Even if the scope of actionable claims under section 278.01 is limited to the five types listed in the statute, the counties maintain that the misapplication of class rates can be challenged as either a partial, unfair or unequal assessment or the levy of an illegal tax. Before addressing whether the misapplication of class rates can be challenged as an unfair or unequal assessment, a brief discussion of how class rates are applied in the property tax process will be helpful.

Minnesota Statutes § 273.13 (2000) divides real property into classes for taxation purposes and assigns each class one or more class rates. The assessor determines a property's class and estimated market value and then applies the appropriate class rate to calculate the property's "net tax capacity." Minn.Stat. § 274.04, subds. 1 & 2 (2000).[7] The net tax capacity is thus the percentage of a property's estimated market value that is subject to taxation. Assessors enter net tax capacities into the assessment books or prepare summaries of total net tax capacities if using a computerized system and forward the books or the summaries to the auditor for certification. *Id.* The auditor is also directed by statute to compute net tax capacities using class rates and estimated market values. Minn.Stat. § 275.08, subd. 1a (2000). Once the auditor receives the levies from the taxing jurisdictions, the

---

4. Throughout the remainder of this opinion, the phrase "property tax" refers to real property taxes.

5. The counties recognize the exclusion of challenges to special assessments as provided in Minn.Stat. § 278.01, subd. 3 (2000).

6. *Crow Wing County* concerned whether a county had standing to appeal a decision of the commissioner of taxation under Minn.

Stat. § 271.06, subd. 1 (1965) and does not apply here. 275 Minn. at 11, 144 N.W.2d at 718.

7. For example, if a property was valued at $500,000 and is assigned to a class with a two percent class rate, the resulting net tax capacity of the property is $10,000 (.02 × 500,000 = 10,000).

auditor then "spreads the levy" by dividing it by the total net tax capacity in the jurisdiction, a calculation that fixes the tax rate, and then finally applies the tax rate to an individual property's net tax capacity to calculate the property tax. *Id.*, subd. 1b.[8]

■ Our brief review of the property tax process demonstrates that one of the assessor's duties is to determine the proper class rates and apply them to market value. Respondents contend nonetheless that erroneous class rates are not assessment errors because applying class rates has none of the hallmarks of valuation or classification—two tasks that we have determined belong to the assessment process. *Summit House Apartment Co. v. County of Hennepin,* 312 Minn. 358, 362, 253 N.W.2d 127, 129 (1977).[9]

Respondents take too narrow a view of the assessment process. Our cases describe assessment as including the entire process that results in the determination of a property's taxable value. In *Swanson v. Minnesota Tax Commission,* we said,

> To assess property is to fix its value for the purpose of taxation. The assessed valuation of property is that value upon each unit of which a prescribed amount must be paid as taxes in the future; it is a factor which, together with the tax rate fixed by the taxing agencies of government, is used to determine the amount of taxes to be charged against specific property.

205 Minn. 582, 591, 287 N.W. 317, 322–23 (1939) (citations omitted). This describes a process that includes, rather than ex-

cludes, the application of class rates to estimated market value to arrive at the assessed valuation. *Accord B.W. & Leo Harris Co. v. Dakota County,* 246 Minn. 20, 25, 74 N.W.2d 111, 114 (1955) (explaining that the assessment process includes both entering the property's value in the book opposite the description and entering the assessment in the assessment book). We also considered the nature of assessment in *Summit House,* where we held that the taxpayer was not entitled to the new class rate for the period in question because reclassification was a duty of the assessor rather than the auditor. 312 Minn. at 363, 253 N.W.2d at 130. In distinguishing between the duties of the assessor and the auditor we explained, "The assessor is entrusted with the responsibility of assessing property for the purpose of determining its value for taxation. In contrast, the auditor has the duty of calculating and assessing the taxes once the taxable value has been determined by the assessor." *Id.* at 362, 253 N.W.2d at 129 (citations omitted).

In *Summit House* we concluded that classification is an aspect of the assessment process in part because classification is integral to the assessor's function of ascertaining a property's taxable value. *Id.* We determined that the task of classification is the duty of the assessor, not the auditor, because "the assessor has primary responsibility for ascertaining taxable value, [and] it logically follows that the task of classifying property is an integral part of this function * * *." *Id.* Like classification, applying class rates is integral to the assessor's function of ascertaining a prop-

---

**8.** For example, if a taxing district, like a county, certifies a levy of $1,000,000, and the total of all net tax capacities of taxable properties in the county equals $2,000,000, the resulting tax rate (or tax capacity rate) is .5 (1,000,000 / 2,000,000 = .5). If the property's net tax capacity is $10,000, the resulting property tax is $5,000 (10,000 × .5 = 5,000).

**9.** Valuation is the process of determining a property's estimated market value, and classification is the process of determining the statutory class into which a property falls.

erty's taxable value. The assessor must multiply the appropriate class rate against the property's estimated market value to determine a property's taxable value.

Contrary to respondents' argument and the dissenting opinion, action by the assessor need not entail fact-finding or the exercise of discretion for it to be considered part of the assessment process. In *Fichtner* we said that assessment is "the quasi-judicial act consisting of making a list of the taxpayer's property and fixing its valuation for appraisement and tax purposes," 271 Minn. at 267, 135 N.W.2d at 880, but we did not limit assessment to fact-finding or discretionary functions. The issue in *Fichtner* was not the scope of the assessment process but whether an assessment could be challenged under Minn.Stat. § 275.26 (2000), which provides a cause of action to challenge illegal legislative levies. Although we described the overall assessment process as quasi-judicial, that description does not preclude the consideration of nondiscretionary acts as elements of assessment. The process we described in *Fichtner*, ranging from listing the taxpayer's property to fixing its valuation for tax purposes, is consistent with our previous cases defining assessment as inclusive of the acts necessary to determine a property's taxable value. 271 Minn. at 266, 135 N.W.2d at 880.

We held in *Saxhaug v. County of Jackson* that a nondiscretionary error—failure to specify a mill rate as required by statute—could be challenged under section 278.01. 215 Minn. 490, 495, 10 N.W.2d 722, 725 (1943). Our rationale in *Saxhaug* was that chapter 278 preserved the challenges that were formerly available under Mason St.1927, § 2116, a section of the delinquent tax statutes. 215 Minn. at 495, 10 N.W.2d at 725. Section 2116 provided taxpayers with a broad cause of action:

> Any person having any estate, right, title or interest in, or lien upon, any parcel of land * * * within twenty days after the publication of [the notice of delinquent taxes] may file with the clerk *an answer * * * setting forth his defense or objection to the tax or penalty against such parcel of land.*

Mason St. § 2116 (emphasis added). We construed section 2116 broadly, concluding that "the statute was not intended to precisely define and limit the defenses which may be made." *Otter Tail County v. Batchelder,* 47 Minn. 512, 515, 50 N.W. 536, 537 (1891). Section 2116 allowed challenges to a property tax based on errors in calculating the tax due, including omissions and errors in computing the amount of tax due, if the error or omission resulted in partial, unfair or unequal assessment. *Kipp v. Dawson,* 31 Minn. 373, 377–78, 17 N.W. 961, 962 (1884). *See also State v. Certain Lands in Redwood County,* 40 Minn. 512, 519, 42 N.W. 473, 475 (1889). Because claimants could challenge nondiscretionary acts under section 2116, the preservation in section 278.01 of challenges that were actionable under section 2116 supports the conclusion that nondiscretionary aspects of the assessment process are subject to challenge under section 278.01.

A more inclusive concept of the assessment process that makes alleged nondiscretionary errors subject to section 278.01 is consistent with the purpose and function of chapter 278. We observed in *Elam* that the express wording of chapter 278 demonstrates that it was enacted to benefit both the taxpayer and the state. 250 Minn. at 277–78, 84 N.W.2d at 230. The taxpayer benefited because chapter 278 provided a means to object to property taxes without first having to default and then answer in delinquent tax proceedings, and the state benefited because, by providing a cause of action without having to default, chapter 278 limited or prevented tax delinquency

and enforced the prompt collection of taxes, ensuring a reliable stream of revenue at a time when local governments were threatened by financial instability. *Elam*, 250 Minn. at 278, 84 N.W.2d at 230. Having provided a means to challenge property taxes for the purpose of ensuring their prompt payment, the legislature would not then undermine that purpose by allowing a significant number of tax grievances to be free of the chapter 278 filing limitation and, consequently, actionable years after the taxes were due. When taxpayers have missed an opportunity to bring a claim under section 278.01, we have consistently rejected their efforts to seek an alternative statutory remedy, in part because we have recognized that the legislature established a limited time frame to bring a property tax action to promote the prompt collection of taxes and avoid a multiplicity of suits. *E.g., Fichtner*, 271 Minn. 263, 135 N.W.2d at 878; *Elam*, 250 Minn. at 279–80, 84 N.W.2d at 231; *Land O'Lakes*, 225 Minn. at 547, 31 N.W.2d at 662. Leaving many types of challenges open to equitable remedies would undermine the benefits the legislature intended to provide in setting the short time limit in chapter 278.

The express wording of section 278.01 supports a broad interpretation of its scope in other ways. First, the terms used to describe the five categories—e.g. "assessed" and "illegal" tax—are broad in nature. Minn.Stat. § 278.01, subd. 1. Second, chapter 278 acknowledges and preserves Minn.Stat. § 279.19 (2000) except as otherwise provided in chapter 278. Section 279.19 allows a judge to reduce a judgment for delinquent taxes based on the "omission of any of the things by law provided in relation to such assessment and levy, or of anything required by any officer to be done prior to the filing of the [delinquent tax] list with the court administrator * * * [if] such omission has resulted to the prejudice of the party objecting,

and * * * [in] taxes [that] have been partially, unfairly, or unequally assessed * * *." Minn.Stat. § 279.19. The phrases "omission of any of the things required by law" and "anything required by any officer" are broadly inclusive, and are vindicated through a petition under section 278.01. *See* Minn.Stat. § 278.06 (stating section 279.19 applies "except as herein otherwise provided").

■ We conclude that assessment is the process by which taxable value is ascertained, and that process includes the determination of market value, classification and the application of class rates. In current statutory parlance, the taxable value of property is its net tax capacity. Thus, assessment for the purposes of section 278.01, subdivision 1 is the process of determining a property's net tax capacity. Accordingly, we hold that applying the appropriate class rate is part of the assessment process and any errors in applying the class rates that result in the partial, unfair or unequal assessment of property are subject to challenge under section 278.01, subdivision 1.

Having concluded that an erroneous class rate may be challenged as an unfair or unequal assessment, we need go no further in determining whether respondents have a cause of action under section 278.01, subdivision 1. We will nonetheless discuss whether the application of an erroneous class rate is also the levy of an illegal tax under section 278.01, subdivision 1, because the court of appeals addressed this issue in a published opinion.

We have noted that the term "levy" has been used in the context of the taxation process with various meanings—as imposing a tax by legislative act, collecting the tax by executive act and determining the amount of tax to be raised by vote. *State v. Lakeside Land Co.*, 71 Minn. 283, 291,

73 N.W. 970, 973 (1898). In *Fichtner* we observed that the term "levy" can refer loosely to "the entire process by which revenue is raised," 271 Minn. at 266, 135 N.W.2d at 879, and in the context of section 278.01, we have not limited the concept "levy of an illegal tax" to legislative acts, *see Weyerhaeuser Co. v. County of Ramsey*, 461 N.W.2d 922, 924 (Minn.1990). As we have said, we are inclined to interpret broadly the types of challenges that may be brought under chapter 278 to serve the purposes for which the statute was enacted. We therefore interpret "levy" for the purposes of section 278.01 in its broad sense as we described in *Fichtner*.

■ This interpretation of levy does not render the other four types of challenges listed in section 278.01 superfluous, because the levy must be of an illegal tax. A challenge based on the fact that the tax has been paid does not suggest an illegal act. Further, an error in judgment with respect to a particular parcel of property does not result in an illegal tax. An overvaluation of a property's market value, the misclassification of a property or the imposition of a tax on tax-exempt property, for example, does not result in illegal taxes if the alleged error is based on the assessor's judgment. We conclude that the application of class rates by an assessor is part of the extension and collection of taxes by executive power, and therefore the misapplication of class rates as prescribed by statute is the levy of an illegal tax for the purposes of section 278.01.[10]

We have concluded that respondents had a cause of action to challenge the erroneous class rates under section 278.01, and as it is undisputed that respondents did not file chapter 278 petitions before the filing deadline lapsed, we must consider next whether chapter 278 is respondents' exclusive statutory remedy. We have established that challenges that a property has been partially, unfairly or unequally assessed must be brought, if at all, under chapter 278. *Evanson v. Comm'r of Taxation*, 280 Minn. 559, 561, 159 N.W.2d 259, 261 (1968). Now that we have determined that respondents' claim is an assessment challenge, this rule would suggest that respondents may not seek an alternative statutory remedy.

■ Respondents contend, however, that in 1987 the legislature made available an alternative remedy when it enacted Minn.Stat. § 276.19.[11] We disagree with respondents and amicus curiae that section 276.19 creates an independent cause of action to bring challenges that could have been brought under section 278.01. While the phrase "overpayment * * * for any reason" is inclusive, to adopt such a construction of the statute would effectively abrogate the statute of limitations set forth in section 278.01 and subvert the policies the time limitation was intended to serve. We will not construe one statute to abrogate another involving the same subject matter without clear legislative intent. *See State ex rel. Mergens v. Babcock*, 175 Minn. 583, 585, 222 N.W. 285, 286 (1928). Section 276.19 is a notice statute—it contains no express language providing tax-

---

10. The dissenting opinion contends that we have defined illegal tax so as to create an "absurdity" because a taxpayer's claim may not be "knowable" until the March 31 deadline. Most, if not all, acts relating to the assessment and extension of property taxes, however, occur before March 31 of the year taxes are due. In this case, the misapplica-

tions of class rates occurred and were "knowable" before the March 31 deadline.

11. Section 276.19 provides that if an overpayment arises on a parcel "for any reason" the county must notify the taxpayer and instruct the taxpayer on how to claim the overpayment. Minn.Stat. § 276.19, subd. 1.

payers with a cause of action to challenge property taxes in court. Section 276.19 requires the county to notify the taxpayer that an overpayment has been made as determined in a separate proceeding, but it does not provide an independent procedure to challenge an overpayment.[12]

Respondents argue that if section 278.01 provides the exclusive cause of action to dispute class rates, then section 278.01 violates their federal and state due process rights to notice prior to a deprivation of their property. Respondents must show beyond a reasonable doubt that the notice provisions were unconstitutional. *In re Cold Spring Granite Co.*, 271 Minn. 460, 467, 136 N.W.2d 782, 787 (1965). As applied to this case, respondents contend that they did not have an opportunity to challenge the class rates because they could not have known from their property tax notices that they were not receiving the correct rate. Respondents also challenge the facial constitutionality of section 278.01 on the grounds that under Minn. Stat. § 276.04 (2000) their final property tax statements need not have been sent until March 31—the last day they could have filed a chapter 278 petition. Minn. Stat. § 276.04, subd. 3 (2000).

The U.S. Supreme Court set forth the notice requirement under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution with respect to property taxes as follows:

[A] law authorizing the imposition of a tax or assessment upon property according to its value does not infringe that provision of the Fourteenth Amendment to the Constitution * * * if the owner has an opportunity to question the validity or the amount of it either before that amount is determined or in subsequent proceedings for its collection.

*Winona & St. Peter Land Co. v. Minnesota*, 159 U.S. 526, 537, 16 S.Ct. 83, 40 L.Ed. 247 (1895). We upheld the same notice requirement under the Minnesota Constitution six years earlier. *Certain Lands in Redwood County*, 40 Minn. at 518, 42 N.W. at 475. We subsequently held that the mere publication of the tax list was sufficient notice of the levy of a property tax. *In re Delinquent Polk County Real Estate Taxes*, 147 Minn. 344, 348–49, 180 N.W. 240, 242 (1920).

We are not persuaded that respondents were denied their constitutional rights to due process for several reasons. First, the notice respondents received gave them a meaningful opportunity to be heard. Property owners receive three notices concerning their property tax before it becomes due. The first notice states the property's estimated market value, and it must be sent out at least 10 days before the local board of equalization meets in April or May of the year taxes are assessed—the year preceding the year taxes are due. Minn.Stat. § 273.121 (2000). The second notice, the "truth in taxation" statement, is sent to each taxpayer between November 10 and November 24 of the year taxes are assessed and contains the estimated market value, class, proposed tax and notice of the place and time local taxing jurisdictions will meet to dis-

---

**12.** Our construction has no effect on property taxes payable in 1999 and thereafter because in May 2000 the legislature replaced the language "for any reason" in section 276.19 with "due to receipt of a payment that exceeds the total amount of the tax required to be paid on the property tax statement * * *." Act of May 15, 2000, ch. 490, art. 5, § 18, 2000 Minn.

Laws 2014, 2085–86. The amendment was put forward explicitly to avoid the construction forwarded by respondents and amicus curiae. Informal hearing on S.F. 2654, Sen. Tax Comm., Property Tax and Local Gov't Budget Div., Feb. 22, 2000 (audio tape) (comments of officials from the Minnesota Department of Revenue).

cuss their levies for the year. Minn.Stat. § 275.065 (2000). The third notice, the final property tax statement, must contain the property's estimated market value, classification, and tax and must be sent out no later than March 31 of the year in which taxes are due. Minn.Stat. § 276.04. Thus, by the end of November of the year taxes are assessed, taxpayers are informed that they will be taxed and are given an estimate of that tax. At that point respondents have the opportunity to challenge local taxing district levies at local meetings, seek an adjustment directly from the assessor, bring an action challenging the property tax as provided under section 278.01, subdivision 1 until March 31 of the following year and seek an abatement until the end of the year taxes are payable.

Despite this notice, respondents contend that the tax notices, while conforming to statute, do not for practical purposes inform them that the wrong class rate was applied. In the context of challenges to property taxes, notice need not expressly identify every factor and decision that went into the determination of the estimated or final tax on the parcel. The taxpayer may not know for certain whether the estimated tax is lawful or correct by looking at the notice, but the taxpayer is on notice that a tax of an estimated amount will be levied according to the stated value of the property. Our decision in *Certain Lands in Redwood County*, 40 Minn. at 518, 42 N.W. at 475, indicates that the federal and state constitutions require that the taxpayer have an opportunity to question the validity and amount of the tax, not be apprised of all elements of the tax that might contain errors. Such a lengthy document not only would be burdensome to local governments but likely would go un-

read by taxpayers. The notice of the estimated tax gives the taxpayer adequate notice from which to inquire as to the basis of the tax and then challenge it if the taxpayer believes it was calculated improperly.

As to the facial constitutionality of the March 31 deadline in section 278.01, we observe again that taxpayers have several months after receiving their truth-in-taxation statement to challenge their estimated property tax. Moreover, section 278.01 provides only one of several opportunities to challenge property taxes. Taxpayers may challenge the estimated market value of their property before local boards of review and equalization. Minn. Stat. § 274.01, subd. 1 (2000). Taxpayers may seek adjustments directly from county assessors. Minn.Stat. § 273.061, subd. 9 (2000). Taxpayers may apply for an abatement from the county at least through the end of the year taxes are due and for two additional years if a clerical error is discovered. Minn.Stat. § 375.192. Finally, the commissioner of revenue is empowered to provide abatements under certain circumstances. Minn.Stat. § 270.07, subd. 1 (2000). Due process does not require any particular form of process as long as it provides notice and a meaningful opportunity to be heard. Based upon the variety of means provided in Minnesota Statutes to challenge property taxes, we conclude that respondents received constitutionally sufficient due process.

Respondents maintain that if they have no statutory remedy they may proceed independently under the theory that the class rate error violated their constitutional right to equal protection under the Fourteenth Amendment to the U.S. Constitution [13] and the Uniformity

---

**13.** "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

Clause in Article X, Section 1 of the Minnesota Constitution.[14] We do not reach the issue of whether respondents may proceed independently under either theory because we conclude as a matter of law that the class rate error did not violate respondents' federal and state equal protection rights. To meet the evidentiary burden of establishing a violation of equal protection rights protected by the federal or state constitution, a taxpayer must show that the purported disparity between the taxpayer's assessment and the assessment of similarly situated properties was the result of intentional or arbitrary or systematic discrimination. *See United Nat'l Corp. v. County of Hennepin*, 299 N.W.2d 73, 76 (Minn.1980). Respondents contend that they were denied the correct class rate because of "bureaucratic errors in the auditor's office." While there is some indication in the record that the assessors had difficulty in applying the reduced class rate, there is no evidence that the assessors intentionally or arbitrarily applied the reduced rate to some eligible properties but not to others. Respondents, relying on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), contend that the class rate error is the very essence of arbitrary state action, but the equal protection issue discussed in *Logan* in Justice Blackmun's separately written opinion cited by respondents was whether an Illinois *statute* created unconstitutional classes of claimants, not whether state officials unconstitutionally applied a valid statute. 455 U.S. at 438–39, 102 S.Ct. 1148 (Blackmun, J. concurring). There is no allegation here that section 278.01 creates classes of claimants that receive "radically disparate"[15] rights to review. Where, as here, the differential

treatment is alleged to arise only from bureaucratic errors, the standard of intentional, arbitrary or systematic discrimination necessary to prove a violation of equal protection rights is not satisfied.

■ We hold that respondents had an adequate remedy provided by statute in judicial proceedings under chapter 278 and through local review and abatement to seek redress of their injuries. Further, for the reasons stated above, respondents do not have an independent cause of action under Minn.Stat. § 276.19, nor have their constitutional due process rights or equal protection rights been violated. Having failed to avail themselves of adequate statutory remedies, respondents may not recover their property tax overpayments in common law or equity.

Reversed in part; affirmed in part.

STRINGER, Justice (dissenting).

I respectfully dissent. The majority's definitions of the terms "assessment" and "levy of an illegal tax" for the purposes of Minn.Stat. § 278.01, subd. 1 (2000) are overbroad and result in the application of the strict statute of limitations set forth in section 278.01 to claims the section was not intended to extinguish.

For purposes of section 278.01, assessment should be limited to determinations of valuation and classification because they are discretionary judgments that are difficult to defend after an extended period of time and are typically facially apparent on the property tax notices—consequently the taxpayer should be expected to move expeditiously to challenge them. In *Fichtner v. Schiller* we defined assessment as "the quasi-judicial act consisting of making a

---

**14.** "Taxes shall be uniform upon the same class of subjects and shall be levied and collected for public purposes * * *." Minn. Const. art. X, § 1.

**15.** 455 U.S. at 438, 102 S.Ct. 1148 (Blackmun, J. concurring).

list of the taxpayer's property and fixing its valuation for appraisement and for tax purposes." 271 Minn. 263, 267, 135 N.W.2d 877, 880 (1965). We held that an objection to an increase in real estate valuation was a matter relating to assessment and therefore must be brought under section 278.01. *Fichtner*, 271 Minn. at 267, 135 N.W.2d at 880. We determined that assessment extends to another area of discretionary judgment—classification—in *Summit House Apartment Co. v. County of Hennepin*, 312 Minn. 358, 361, 253 N.W.2d 127, 128 (1977). In *Summit House* we concluded that classification is an assessment function involving "factual judgments concerning compliance with specified statutory criteria," *id.* at 362–63, 253 N.W.2d at 129, a discretionary determination. We reasoned that classification is the assessor's duty in part because classification involves a fact-finding responsibility rather than the "administrative calculation of the appropriate tax that may be performed by the auditor." *Id.* at 362, 253 N.W.2d at 129.

Discretionary judgments are not only central to the assessment process—their expedited resolution was an important factor triggering the reform of property tax administration that led to the adoption of chapter 278 in the first instance. Until chapter 278 was adopted in 1935, a taxpayer could only challenge a property tax in delinquency proceedings. Historical records indicate that one of the objectives of chapter 278 was to expedite the resolution of challenges to valuation because the long passage of time between assessment and delinquency made valuation judgments difficult to defend. *Tax Delinquency, Report and Recommendations of a Committee Appointed by Governor Floyd B. Olson,*

Jan. 1, 1935, 1, 4. We recognized in *Petition of Slaughter* that the legislature put chapter 278 in place to shorten the time frame between the assessment and payment of property taxes. 213 Minn. 70, 72, 5 N.W.2d 64, 66 (1942).

Assigning the appropriate class rate to the taxpayers' property, the matter before the court here, is not an exercise of discretion in any sense because the property's classification has already been determined and the assessor has no further discretion—assuming the taxpayer qualifies under the single parcel per county limitation, the reduced rate must be applied. I would conclude therefore that applying class rates is not assessment for purposes of the taxpayers' remedies under section 278.01.

The majority also employs an overbroad definition of the expression "levy of an illegal tax." For purposes of section 278.01, the term "levy" should be limited to the legislative determination to raise money by taxation. *See Saxhaug v. County of Jackson*, 215 Minn. 490, 494, 10 N.W.2d 722, 724 (1943) ("As applied to the determination to raise money by taxation, to levy a tax means to impose on persons or property by the exercise of legislative power a tax of a certain amount or of a certain percentage according to a determined tax base.").[1] Legislative levies are public information and are available to the taxpayer before the March 31 deadline set forth in section 278.01 arrives, as local jurisdictions must set their levies during the year taxes are assessed. Minn.Stat. § 275.065 (2000). Taxpayers have an opportunity to contest those levies at local meetings, Minn.Stat. § 275.065, subd. 6 (2000), and, if not satisfied, seek judicial review before March 31 of the following year when taxes are due, Minn.Stat.

---

1. *See also Fichtner*, 271 Minn. at 266, 135 N.W.2d at 880; *State ex rel. Minneapolis Fire Dep't Relief Ass'n v. City Council of Minne-* *apolis*, 161 Minn. 103, 105, 200 N.W. 932, 933 (1924).

§ 278.01, subd. 1. Limiting the term "levy" to the legislative determination of the property tax rate has the added benefit of setting reasonable parameters on the scope of "illegal tax." Levy rates exceeding statutory authority are illegal, but also are determinable by the taxpayer before the March 31 deadline for challenge. If, as the majority holds, misapplication of a class rate is the levy of an illegal tax, and therefore the March 31 challenge deadline applies under 278.01, the taxpayer may not even know of the misapplication until the very day the tax notice is received.[2] Applying the statute of limitations set forth in section 278.01 to a claim that becomes knowable on the very date of expiration is an "absurdity too gross to be insisted on."[3]

Where the taxpayers unknowingly overpaid their taxes in reliance upon a nondiscretionary, ministerial act of a tax official incorrectly applying the class rate, as here, we have awarded taxpayers relief from property tax overpayments. In *Wheeler v. Board of Commissioners of Hennepin County,* a property owner applied to the county auditor for a statement showing the amount of property taxes due on his property for the year in question. 87 Minn. 243, 244, 91 N.W. 890, 890 (1902). The county auditor overstated the amount due, and the property owner paid the overstated tax. *Id.* We ordered the county to refund the overpayment because the property owner "could safely presume, when reading the statement * * * that the audi-

tor had performed his duty * * *." *Id.* at 245, 91 N.W. at 890. We observed that the case before the court was distinguishable from those where the taxpayer paid the tax knowing it was incorrect and then sought equitable relief. *Id.* at 245–46, 91 N.W. at 890–91. The taxpayers here were similarly entitled to rely on the several property tax statements and assume that the assessors and auditors had properly discharged their duty and applied the correct class rates. The legislature has provided no judicial remedy to recover their overpayments,[4] and as the parties do not dispute that a taxpayer without an adequate statutory remedy may proceed in equity to seek recovery, I would hold they are entitled to do so under theories of common law or equitable relief.

PAGE, Justice (dissenting).

I join in the dissent of Justice Stringer.

GILBERT, Justice (dissenting).

I join in the dissent of Justice Stringer.

---

2. Tax bills prepared by the county treasurer must be sent to the taxpayer no later than March 31. Minn.Stat. § 276.04, subd. 3 (2000).

3. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803).

4. It appears that the legislature may also have concluded that there was a need for relief, as in 2000 it adopted Minn.Stat. § 278.14 (2000), which provides that a county must refund a "mistakenly billed tax" as provided in the section. Act of May 15, 2000, ch. 490, art. 5, § 19, 2000 Minn. Laws 2014, 2086 (codified at Minn.Stat. § 278.14). While the question of whether a misapplied class rate is a "mistakenly billed tax" is not before us, adoption of section 278.14 suggests that the legislature saw the need to provide an administrative remedy for mistakenly billed taxes because a statutory remedy was not available under section 278.01.